584 So.2d 242 (1991)
STATE of Louisiana
v.
Kerry MYERS and William Fontanile.
No. 90-KA-539.
Court of Appeal of Louisiana, Fifth Circuit.
June 26, 1991.
Writs Denied November 1, 1991.
*245 Dorothy A. Pendergast, W.J. LeBlanc and Howat Peters, Asst. Dist. Attys., 24th Judicial Dist. Court, Gretna, for plaintiff/appellee.
Ralph S. Whalen, Jr., New Orleans, for defendant/appellant Myers.
Nick F. Noriea, Jr. and Madeleine M. Landrieu, New Orleans, for defendant/appellant Fontanille.
Before GRISBAUM, DUFRESNE and GOTHARD, JJ.
GOTHARD, Judge.
On October 8, 1987 Kerry Myers and William Fontanille were charged, by Grand Jury Indictment, with conspiracy to murder their respective spouses and with second degree murder in the beating death of Janet Myers, defendant Kerry Myers' wife. Myers and Fontanille pled not guilty at arraignments on November 3, 1987 and November 17, 1987, respectively. Fontanille alone had been previously indicted in connection with the murder of Janet Myers. After a jury trial which resulted in a hung jury with six jurors voting to convict and six voting to acquit, a mistrial was declared. Following that mistrial the aforementioned indictment of both defendants was filed.
The defendants filed numerous pre-trial motions including motions to have the state lay the predicate for its introduction of certain statements made by defendants before using them in the trial for conspiracy. After a hearing on the matter, the trial court ruled that the statements were inadmissible since the state failed to present a prima facie case of conspiracy. The state applied for writs in this court which were denied.[1] The Supreme Court granted writs and in State v. Myers, 545 So.2d 981 (La. 1989) affirmed the trial court's ruling.
The defendants proceeded to trial on the second degree murder charge on March 26, *246 1990. Although the defendants were tried jointly, Myers waived trial by jury. Consequently, Myers was tried by the bench and Fontanille was tried by the jury. At the conclusion of the trial on April 5, 1990, Myers was found guilty as charged and Fontanille was convicted of manslaughter. Delays were waived and on May 3, 1990, after various post-trial motions were denied, the trial court sentenced Myers to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence and Fontanille to the maximum sentence of twenty-one years at hard labor.

FACTS
At about 1:40 a.m. on February 24, 1984 Kerry Myers dialed 911 and told the emergency operator who answered, "Please, somebody broke in my house and tried to kill me. I just stabbed him." Emergency personnel including police officers and medical professionals were dispatched to the Myers home in Harvey.
Officers DeWilde and Thacker arrived at the scene at about 1:50 a.m. and were met at the door by Kerry Myers. The interior of the house was in darkness. Myers was armed with a shotgun. His left arm was broken and he had several head lacerations. While Myers was receiving the medical attention of ambulance personnel at the scene, Officer DeWilde entered the home, turning on lights as he entered the rooms. He found Janet Myers' body in the blood splattered living room. It was later determined that she died earlier of massive head injuries inflicted by a baseball bat.
Myers informed emergency medical technicians that there were children in the home. That information was relayed to police officers who then resumed their search of the house. Subsequently, a six-week-old female was found, unharmed, in one of the bedrooms. A two and one-half year old boy was found in the master bedroom. The toddler, Ryan Myers, had sustained severe head injuries and was comatose. He was transported along with his father, Kerry Myers, to West Jefferson Hospital for treatment.
Meanwhile, William Fontanille, a long time friend of Kerry Myers, entered Jo Ellen Smith Hospital to seek treatment for several stab wounds. He was questioned about the wounds by New Orleans police officer, John Taylor. Fontanille told Officer Taylor that Myers had killed his wife and child and intended to blame Fontanille. Fontanille explained that he had gone to the home of Kerry and Janet Myers at about 4:00 p.m. on February 23, 1984 to retrieve a baseball bat he had left there on the previous day. Fontanille claims that Kerry Myers let him in the door, attacked him with a knife and stabbed him several times. The two men fought intermittently for the next nine and one-half hours, pausing occasionally to watch television. He stated that Myers kept him at bay with the knife and later the baseball bat, and would not allow him to call an ambulance. He contends that at one point, Myers gave in, stated that he would call an ambulance and went into the kitchen to place the call. Myers allowed Fontanille to go to the window of the front bedroom on a few occasions to see if the ambulance had arrived. When the ambulance did not come, it became apparent that Myers had not actually made the call. Later, Myers gave permission for Fontanille to go to the bathroom, but as Fontanille walked down the hall Myers attacked him from behind. They wrestled for several hours, with neither person being able to gain control of the knife. While they were in the hall, each holding the knife, they began to discuss their domestic problems. Fontanille told Myers that he hadn't seen his son since December and Myers promised to help Fontanille get his son back. They made plans to go to Fontanille's wife's parents' home the next morning to "scare them" and get Fontanille's son. They stayed in the hall for about two hours. Fontanille stated, "and we were gonna wait in the hall, each of us holding the knife so we couldn't do any more damage to each other until it was time for us to leave." Fontanille claims that eventually Myers' grip on the knife loosened and Fontanille was able to flee from the house.
Myers' version of the events in some aspects parallels Fontanille's version. *247 Myers agrees that the two men fought, discussed their domestic problems, and watched television off and on for about ten hours. He agrees that he stabbed Fontanille but he asserts that it was Fontanille who began the attack on the afternoon of February 23, 1984.
Initially, during medical treatment Myers indicated to medical personnel that he came home from work and "found them together," indicating that Janet and Fontanille were alive when Myers first came home. But in a statement to police a few weeks after the murder Myers stated that he came home from work at about 3:30 p.m., unlocked the door and walked in the house. Fontanille immediately began beating him with a baseball bat. He maintains that one of the initial blows caused the broken arm and the head wounds. The two men fought for a while but stopped to watch Magnum P.I. and two other shows on television. Myers said it was Fontanille who pretended to call the ambulance.
Myers also states the two were fighting in the hall for an extended period of time over a knife. In spite of his broken left arm, Myers, who is left-handed, managed to take the knife from Fontanille, stab him and chase him out of the house. Myers immediately called police and reported the incident.
Both defendants asserted in their formal statements that they did not see Janet or the children during the ordeal, although both claim to have heard Janet Myers' moans from the living room and the cries of the infant. Neither defendant mentions any fighting which took place in the master bedroom. However, evidence revealed that room was in total disarray. A jewelry box was broken and drawers to a desk were pulled out and thrown on the floor. It was also in this room that Ryan was found.
Both defendants have appealed their convictions and sentences. Each defendant has assigned six errors for our review. Because we find no merit in any of those assignments, we affirm the trial court's action as to both defendants.

ASSIGNMENTS OF ERROR
Both defendants assert that the trial court erred in granting the state's motion to consolidate.[2]
The defendants, Myers and Fontanille, were jointly indicted for second degree murder and conspiracy to commit murder. Fontanille filed a motion to sever and the trial court severed the murder charges as to the defendants and the conspiracy charge from the murder charges. Thereafter, the state filed a motion to consolidate and later a motion to vacate judgment granting severance and the trial court vacated its previous ruling as to the severance of the murder charges. Subsequently, Fontanille filed a second motion to sever in which Myers joined. The trial court denied the motion. Ultimately both defendants were tried together on the murder charge, Myers by the bench and Fontanille by the jury.
Myers argues that there is no authority in law for the filing of a state motion to consolidate. Myers cites LSA-C.Cr.P. art. 706 in support of his argument. That article provides:
Upon motion of a defendant, or of all defendants if there are more than one, the court may order two or more indictments consolidated for trial if the offenses and the defendants, if there are more than one, could have been joined in a single indictment. The procedure thereafter shall be the same as if the prosecution were under a single indictment.
Myers asserts that it is only a defendant who has a procedural right to file a motion to consolidate. Defendant's reliance on art. 706 is misplaced. The comments to art. 706 notes that, although the article does not permit consolidation upon motion of the state, the state can accomplish the consolidation by dismissing all charges and recharging in a consolidated form. Here, the defendants were charged in one indictment; therefore, the only recourse for the state to obtain a re-consolidation would be by a motion to the trial court to reconsider its previous ruling of severance, i.e., motion *248 to consolidate. Consequently, the state's motion to consolidate was procedurally proper.
Both defendants contend it was error to try them jointly because their defenses were antagonistic. Jointly indicted defendants shall be tried jointly unless the court is satisfied that justice requires a severance. LSA-C.Cr.P. art. 704; State v. Webb, 424 So.2d 233 (La.1982). The accused is not entitled to a severance as a matter of right, but the decision is one resting in the sound discretion of the trial judge. A denial of a motion to sever will not be overturned on appeal absent a clear abuse of discretion. State v. Webb, supra. A severance is necessary if the defenses of the co-defendants are mutually antagonistic to the extent a co-defendant attempts to place the blame on the other, causing each defendant to defend against his co-defendant as well as the state. State v. Prudholm, 446 So.2d 729 (La.1984). However, reversal of a conviction for failure to sever where antagonism is shown is not always mandated unless prejudice can be shown. State v. McGraw, 366 So.2d 1278 (La.1978).
The trial court's reasons for the decision on this issue are contained in the record. The court reasoned that, since neither defendant indicated they saw Janet Myers and claimed not to know what happened, their defenses were not antagonistic. The court stated:
They don't know that the other defendant committed the offense, so I haven't seen anything at this point that indicates that the defendants are in fact antagonistic.
The trial court also reasoned that because one defendant was tried by the jury and one by the bench, as a practical matter the defendants were severed.
We find no abuse of discretion in the trial court's ruling. Each defendant was tried by a separate trier of fact. The jury was excused at the appropriate times and heard only the evidence applicable to Fontanille. Although the trial judge heard the entire matter, he is learned in the law as well as the rules of evidence and procedure and was competent to decide the guilt or innocence of Myers by a consideration of only the appropriate evidence.
This assignment lacks merit.
Both defendants assert that the evidence presented at trial was insufficient to sustain their convictions.[3]
The defendants were jointly charged with second degree murder. The trial court found Myers guilty as charged, while the jury returned the legislatively responsive verdict of manslaughter against Fontanille. LSA-C.Cr.P. art. 814 A.3. A jury may return a legislatively provided responsive verdict, whether or not the evidence supports the verdict, as long as the evidence was sufficient to support a conviction of the charged offense absent a contemporary objection. State ex rel Elaire v. Blackburn, 424 So.2d 246 (La.1982), cert, denied, Elaire v. Blackburn, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983); State v. Schrader, 518 So.2d 1024 (La.1988); State v. Weiland, 562 So.2d 950 (La.App. 5th Cir.1990). Here, Fontanille did not object to the inclusion of manslaughter as a responsive verdict.
Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. LSA-R.S. 14:30.1. Specific criminal intent exists when the circumstances indicate that the defendant actively desired the prescribed criminal consequences to follow his act. LSA-R.S. 14:10(1). Manslaughter includes homicides which would be either first or second degree murder but the offense is committed in sudden passion or heat of blood or without intent to cause death or great bodily harm. Furthermore, all persons concerned in the commission of a crime whether present or absent, and whether they directly commit the act constituting the offense, aid or abet in its commission, or directly or indirectly counsel or procure another to commit the crime are principals. LSA-R.S. 14:24.
*249 In evaluating the sufficiency of the evidence, the standard to be used by the appellate court is whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of every element of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305 (La.1988); State v. DiLosa, 529 So.2d 14 (La.App. 5th Cir.1988), writ denied, 538 So.2d 1010 (La.1989). When circumstantial evidence is used to prove the commission of an offense LSA-R.S. 15:438 provides: "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test whenever circumstantial evidence forms the basis for the conviction. State v. Porretto, 468 So.2d 1142 (La.1985). LSA-R.S. 15:438 may not establish a stricter standard of review than the more general reasonable juror reasonable doubt formula, but emphasized the need for careful observance of the usual standard and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence. State v. Captville, 448 So.2d 676 (La.1984). Ultimately, all evidence both direct and circumstantial must be sufficient under Jackson to satisfy a rational trier of fact that the defendant is guilty beyond a reasonable doubt. State v. Porretto, supra.
Both defendants contend that the evidence did not exclude every reasonable hypothesis of innocence. Fontanille further contends that there was no evidence to suggest that he had the requisite specific intent to kill Janet Myers.
The evidence adduced at trial established that Janet Myers' body was discovered in the living room of 2232 Litchwood Lane, Harvey, Louisiana, the Myers' residence, at approximately 1:50 a.m. on February 24, 1984 when the ambulance service and the police arrived in response to Kerry Myers' call. At that time there were indications of rigor mortis, a sign of death. The cause of death was lacerations[4] from a blunt force injury inflicted on the night and early morning of February 23-24, 1984. A baseball bat encrusted with blood was discovered in the residence. Both defendants were at the residence on the night of the murder and at times Fontanille was in possession of the bat. Also, Fontanille had parked his car down the block.
Carol Weed, an expert in the fields of forensic biology and blood typing, testified that Janet Myers and Ryan Myers were type "A", Fontanille was type "B", and Kerry Myers was type "O".
Dr. Lee, an expert in the fields of serology, bloodspatter analysis, crime scene reconstruction and forensic science, testified that Fontanille's clothes had medium velocity bloodspatter[5] containing type "A" blood thereby indicating that he was near a type "A" blood source and Fontanille's sweater had two head hairs with microscopic characteristics similar to Janet Myers' head hairs. He explained the difference between bloodspatter which results from blood escaping a body and blood transfer spots which may come from simple contact with previously spilled blood. He further testified that Myers' pants and shoes were spotted with type "A" blood and his left shoe had medium velocity bloodspatter containing type "A" blood thereby indicating that he was near a type "A" blood source and was splattered with the blood as it escaped the body.
The severity of the attack on Janet Myers, in which she was bludgeoned to death with a baseball bat, indicates that the defendant had the specific intent to kill *250 or to inflict great bodily harm when he struck her. See State v. Richard, 525 So.2d 1097 (La.App. 5th Cir.1988), writ denied, 538 So.2d 609 (La.1989). Further, the fact that both defendants were present when the victim was murdered and both had splatters of blood on their clothing which matched the victim's could allow a rational trier of fact to find that both defendants were guilty, either by actually committing the offense or by acting as a principal to the offense.
The appellate court's primary function is not to redetermine a defendant's guilt or innocence in accordance with its appreciation of the facts and credibility of the witnesses. Rather, its function is to review the evidence in the light most favorable to the prosecution and determine whether there is sufficient evidence to support the verdict. State v. Burrow, 565 So.2d 972, 977 (La.App. 5th Cir.1990). From the totality of the evidence submitted by the prosecution, a rational trier of fact could have found that each defendant was either guilty of second degree murder or a principal to it.
These assignments lack merit.

FONTANILLE'S ASSIGNMENTS OF ERROR
By his first assignment of error Fontanille asserts that the trial court erred when it failed to quash the second degree murder indictment. Fontanille argues that the state failed to bring him to trial timely. His argument is twofold. Initially, he argues that the time limitations for commencement of trial had expired pursuant to LSA-C.Cr.P. art. 578. That issue was presented to this court previously in State v. Myers, 89-K-719 (La.App. 5th Cir.1989); writ den. 556 So.2d 1277 (La.1990). It was determined at that time that the trial court was not in error in its denial of the motion to quash. In accordance with State v. Fontenot, 550 So.2d 179 (La.1989) we have again considered the merits and find nothing in the record to justify reaching a different conclusion.
Fontanille also contends that he was denied his constitutional right to a speedy trial. The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and by Article 1 Section 16 of the Louisiana Constitution. The right attaches when an individual becomes an accused by formal indictment or by bill of information, or by arrest and actual restraint. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); State v. Sweeney, 443 So.2d 522, 526 (La.1983). Four factors must be considered in determining whether a defendant has been deprived of his right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The initial inquiry is into the length of the delay; if the delay is presumptively prejudicial, there will be an inquiry into the other factors. The length of the delay that will provoke such an inquiry is dependent upon the peculiar circumstances of the case. State v. Sweeney, supra, at 526.
The first trial was held in October and November of 1986 and resulted in a hung jury. Following the mistrial defendant was charged with second degree murder on October 8, 1987 and trial commenced on March 26, 1990. The delay between defendant's second indictment and trial was approximately twenty-nine months. Because we consider the overall delay between the time of defendant's arrest to the second trial to be presumptively prejudicial, we will conduct an inquiry into the other factors mentioned above.
It is true that the defendant has continuously asserted his right to a speedy trial in that he began filing motions after the original indictment and has never sought a continuance. But, the reason for the initial delay is that a mistrial was declared in the first trial thereby necessitating a second trial. Since the second indictment defendant has filed numerous pre-trial motions in addition to the motions filed by co-defendant. Also defendant's writ application in this Court from the denial of the motion to quash upset the November *251 6, 1989 trial date thus causing further delay.
The final factor to consider is whether the delay resulted in prejudice to defendant. Barker notes that prejudice to the defendant must be considered in light of the interest the speedy trial right was designed to protect: (1) to prevent oppressive pre-trial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. Barker v. Wingo, supra, 407 U.S. at 532, 92 S.Ct. at 2193.
Here, the defendant may argue that he was prejudiced to some extent by living under a cloud of suspicion and anxiety; however, there was no evidence of oppressive pre-trial incarceration and defendant's ability to adequately prepare his defense was not impaired.
It cannot be precisely determined when the right has been violated. Barker v. Wingo, supra; State v. Foat, 442 So.2d 1146 (La.App. 5th Cir.1983). Any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case. Barker v. Wingo, supra; State v. Foat, supra.
The principles to be considered in an analysis of the speedy trial right were quoted by this court in State v. Foat, supra at 1149:
In the first place, "[t]he amorphous quality of the right ... leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived. This is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried." Barker, 407 U.S. 514, 522, 92 S.Ct. 2182, 2188, 33 L.Ed.2d 101; State v. Alfred, 337 So.2d 1049, 1057 (La.1976).
Moreover, overzealous application of this remedy would infringe"the society's interest in trying people accused of crime rather than granting them immunization because of legal error...." State v. Alfred, 337 So.2d 1049, 1057 (La.1976), quoting United States v. Ewell, 383 U.S. 116, 121, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966).
After full consideration of all of the relevant factors and principles as they relate to the circumstances of this case we find no violation of defendant's right to a speedy trial.
By his third assignment Fontanille asserts the trial court erred when it denied his motion to exclude the 911 statement made by Kerry Myers. During the trial the court admitted into evidence a recording and a transcript of the emergency telephone call made by Kerry Myers on the evening of the murder. In admitting the evidence the court ruled that it was part of the "res gestae."
Defendant contends that the "911 statement" is hearsay and does not fall within the definition of "res gestae" in that the statement is a narration of events which occurred as much as ten hours before the call. We disagree.
The concept of "res gestae" has been codified in LSA-C.E. art. 801(D)(4) which provides as follows:
D. Statements which are not hearsay. A statement is not hearsay if:
. . . . .
(4) Things said or done. The statements are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.
In the instant case Kerry Myers made the call immediately after Fontanille left his residence. Although he did disclose details of the evening including implicating Fontanille as the person who had beaten Janet Myers, this was in response to the operator's questions and was more spontaneous than narrative. Consequently, the emergency call was part of the "res gestae" and therefore admissible. See State v. Martin, 562 So.2d 468 (La.App. 5th Cir.1990) writ den. 566 So.2d 987 (La.1990).
*252 This assignment lacks merit.
Fontanille's fourth assignment of error asserts that the trial court erred when it allowed the prosecutor to elicit exculpatory material from two fact witnesses who had not previously been disclosed to the the defendant. The defendant argues that two witnesses, Patricia Murphy and Ernest Barrow, gave testimony which implicated Myers and was favorable to Fontanille. He further contends that this evidence was material, exculpatory evidence not disclosed to Fontanille prior to their taking the stand.
The first witness, Patricia Murphy, an emergency medical technician who treated Ryan Myers at the scene, testified that defendant, Kerry Myers, inquired about the child's condition and commented "Damn him ... they did this to my child." Later while in the emergency room at West Jefferson Hospital Ms. Murphy heard Myers say, "Damn him and her I found my neighbor and my wife in bed together." However, on cross-examination Ms. Murphy clarified her previous testimony by stating that Kerry Myers said that he "came home and found them together."
At trial the defense argued that this testimony indicated someone other than Fontanille and Myers, some "neighbor," was at the scene when Kerry Myers came home. The judge allowed Fontanille's defense counsel to cross-examine Ms. Murphy in the presence of the jury. During that examination the witness read her previous testimony concerning the neighbor to the jury and clarified her testimony.
The second witness, Ernest Barrow, an attorney, testified that he met with Janet Myers approximately two months before her murder. The victim sought Mr. Barrow's advice and counsel on the legal consequences of separation such as child support, alimony and community property.
Upon a defense request, the state must disclose evidence that is favorable to the defendant when it is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Evidence favorable to the defendant includes both exculpatory and impeachment evidence. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Neutral evidence does not fall into this category. State v. Heath, 513 So.2d 493 (La.App. 2nd Cir.1987); writ den. 519 So.2d 141 (La.1988). The standard for determination of the materiality of evidence was set forth in United States v. Bagley, supra, as follows:
The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. 105 S.Ct. at 3383.
The mere possibility that evidence undisclosed prior to trial may have been helpful to the defense does not establish "materiality;" the reasonable probability of a different outcome is required. United States v. Bagley, supra; State v. Dietrich, 567 So.2d 623 (La.App. 1st Cir.1990).
It is clear that evidence offered by Mr. Barrow that Janet Myers sought legal advice about child support, alimony and community property is neutral evidence not included in the state's responsibility of disclosure.
Ms. Murphy's original testimony regarding Kerry Myers' statement that he found a "neighbor" with his wife could have been exculpatory to Fontanille. However, because the jury heard that testimony and the cross-examination, we do not believe the defendant was prejudiced by this lack of disclosure. Even if this testimony was exculpatory and material in a constitutional sense, the failure of the state to disclose it will not constitute reversible error absent actual prejudice to the defendant. State v. Booth, 448 So.2d 1363 (La. App. 2nd Cir.1984); State v. Heath, supra.
This assignment is without merit.
In his fifth assignment of error Fontanille contends the trial court erred when it failed to exclude the prior testimony of Kerry Myers. At the trial of this matter Kerry Myers was called as a witness for the prosecution against Fontanille. Myers *253 invoked his Fifth Amendment privilege against self-incrimination and refused to testify. The state sought to introduce a transcript of Myers' testimony against Fontanille at the first trial in which Fontanille was the only defendant and Myers was the main prosecution witness. After finding Myers "unavailable" as a witness the trial court admitted the testimony.
Fontanille contends that was error since it denied him the right to cross-examine a witness against him. Fontanille complains that he was unable to cross-examine Myers on new physical and scientific evidence developed since the first trial and on testimony elicited from witnesses at the present trial.
A defendant has a constitutional right to confront witnesses offering testimony against him. An admission of an out of court statement by an unavailable witness does not offend confrontation rights if a good faith effort to produce the witness was made and the statements to be admitted have sufficient indicia of reliability. Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). If the evidence falls within a firmly rooted hearsay exception, reliability can be inferred. Ohio v. Roberts, supra. Article 804 A(1) of the Code of Evidence provides that a witness who "is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement" is unavailable as a witness for purposes of hearsay exceptions. We recognize that in criminal matters hearsay evidence offered against an accused by an "unavailable" witness raises constitutional issues not contained in civil matters. Nonetheless, we find that the interpretation of Article 804 A(1) to include witnesses who invoke the Fifth Amendment privilege against self-incrimination is consistent with Louisiana jurisprudence. See State v. Dotch, 298 So.2d 742 (La.1974), cert, denied, Dotch v. Louisiana, 420 U.S. 976, 95 S.Ct. 1401, 43 L.Ed.2d 657 (1975). We find no error in the trial court's determination that Kerry Myers was unavailable to testify.
Furthermore, since there was an adequate opportunity to cross-examine Myers at the previous trial and defense counsel availed himself of that opportunity by conducting an extensive cross-examination, the testimony bore sufficient "indicia of reliability" and afforded the trier of fact a satisfactory basis for evaluating the truth of the prior testimony. Therefore, defendant's rights to confrontation and cross-examination were not violated by the admission of the prior testimony.
This assignment lacks merit.

MYERS' ASSIGNMENTS OF ERROR
In his second assignment of error Myers contends the trial court erred in admitting statements inculpatory to him which were made by his co-defendant, Fontanille.
At trial Officer Taylor testified that he was present when Officer Adams took an oral statement from Fontanille in the emergency room of Jo Ellen Smith Hospital. During the statement Fontanille stated that Myers revealed that he was going to tell the police that they had talked about killing each other's wives, but Myers did not think Fontanille would go through with it.
Defense counsel objected to the testimony because "that portion of the statement that [sic] has been ruled to be inadmissible as part of the conspiracy," but the trial court overruled the objection after noting that it would be inadmissible if there were conspiracy charges.
Defendant contends that the oral statement of Fontanille was admitted contrary to Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In Bruton the United States Supreme Court held that the admission of a statement of a co-defendant which implicates the other co-defendant violates the implicated co-defendant's right of confrontation, where the co-defendant making the statement does not take the stand. However, the Bruton rule does not apply in a bench trial because it is presumed that the judge is capable of applying the rule of limited admissibility and will consider the proffered statement with respect to the confessor's *254 guilt alone. State v. Ruiz, 437 So.2d 330 (La.App. 2nd Cir.1983) writ denied 440 So.2d 763 (La.1983).
Myers concedes the point that Bruton is inapplicable in a bench trial, but argues that in this matter the trial judge admitted the evidence against Myers and was unable to compartmentalize the evidence presented by the state. We have reviewed the record and do not find that argument persuasive.
In his fourth assignment of error Myers asserts the trial court erred in denying his motion for new trial. At a hearing on the motion for new trial Dr. LaMartina testified that he treated Kerry Myers upon his arrival at the emergency room of West Jefferson Hospital. Myers had a broken forearm and some lacerations of his head. The blood was cleaned off of Myers with a large wet towel before and after the wounds were repaired while his clothes were on thereby accounting for the water in his head and shoulders area. He attended to Myers for approximately thirty minutes. Myers, who was in a state of severe mental suffering and agony, was relating what had happened.
On cross-examination Dr. LaMartina admitted he had no independent recollection of Myers being cleaned up. But it was normal procedure for someone, probably an aide, to clean the patient up before treatment.
He further testified that because Myers was not in control of his emotional state "there's no way he could have been lying to me." Although his name was on the emergency record, Dr. LaMartina was not contacted by Myers' counsel. It was Dr. La-Martina who contacted Myers' attorney after the trial.
Defendant contends that this testimony negates the prosecution's claims that he attempted to conceal his involvement in the murder by cleaning his shirt and that his statement was conceived by Myers and Fontanille after they murdered Janet.
LSA-C.Cr.P. art. 851 provides, in pertinent part:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever.
. . . . .
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
LSA-C.Cr.P. art. 851 contains four generally recognized requisites for a new trial motion based on newly discovered evidence: (1) the evidence must have been discovered since the trial; (2) failure to learn of the evidence at the time of trial must not be due to defendant's lack of diligence; (3) it must be material to the issues at the trial; and (4) it must be of such a nature that it would probably produce an acquittal in the event of retrial. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Talbot, 408 So.2d 861 (La.1981) (on rehearing).
The trial judge's application of these precepts to newly discovered evidence is entitled to great weight, and his denial of a motion will not be disturbed on appeal absent a clear abuse of that discretion, State v. Prudholm, supra; State v. Clayton, 427 So.2d 827 (La.1982); (on rehearing); State v. Talbot, supra.
In denying the motion for new trial the court stated the following reasons:
Well the Court finds first, that the defendant has failed to make a showing that the evidence that was introduced today could not have been obtained with diligent effort prior to, or during the trial.
This is a doctor who was the emergency room treating physician. The statements that were made to him were made by Mr. Myers. He certainly knew of the existence of those statements that he made to the doctor.

*255 The doctor has been in the same place since 1980. His name is on the medical records. His name was available to the defendant, the defendant knew of the character of the statements that he had made, and he could have had the doctor here to testify at trial if he had so desired.
The Court further finds that the testimony probably would not have changed the judgment of guilt, and so for that reason the Motion for a New Trial is denied.
We find no abuse of the trial court's discretion in the denial of Myers' motion for new trial. A treating physician whose name appears on the emergency room record is a witness who could have been found with due diligence. Even assuming arguendo that the evidence could not have been discovered by due diligence, the new testimony would not have changed the verdict. It does not refute the fact that Myers was at the residence at the time of the murder and was splattered with blood that matched the victim's.
This assignment lacks merit.
In his fifth assignment of error the defendant argues that the trial court erred in denying his motion to continue the trial.
Trial counsel for Myers filed a motion to continue the trial asserting that he was involved in litigation concerning his wife and was unprepared to go to trial. Myers contends he was prejudiced by the denial of the motion to continue in several ways. Specifically, his trial counsel failed to call Dr. LaMartina as a defense witness; he stipulated to the admissibility of Fontanille's statements, which were inculpatory to Myers; he failed to object to the failure to sever; failed to timely move for a mistrial when Myers was called to the stand, and; failed to move for an acquittal after the co-defendant presented his case.
The granting or denying of a motion for a continuance is discretionary. LSA-C.Cr.P. art. 712. A denial of a motion for continuance is not grounds for reversal absent an abuse of discretion and a showing of specific prejudice. State v. Benoit, 440 So.2d 129 (La.1983).
Most of these issues were assigned as errors in this appeal, were considered on their merit, and found lacking.
Furthermore, defense counsel had ample time to prepare for trial. The defendant had retained defense counsel since December 1987 and counsel filed numerous pretrial motions. The trial was originally set for November 6, 1989; however, a stay order issued November 3, 1989 by this Court prevented the trial from proceeding as scheduled. The trial was subsequently set for March 26, 1990; therefore, defense counsel had an additional five months to prepare for the trial.
Considering that the defendant was not prejudiced by the denial and that the defendant had adequate time to prepare, the trial court did not abuse its discretion.
This assignment lacks merit.
Myers' final assignment of error asserts the trial court erred in admitting hearsay statements, reportedly made by the victim, introduced to prove motive.
At trial the state called Ernest Barrow, an attorney, who testified that Janet met with him approximately two months before her murder and sought advice regarding child support, alimony and community property. Defense counsel objected to the testimony on the basis that it would violate the attorney-client privilege. On appeal defendant contends that the testimony was hearsay evidence of motive and therefore inadmissible under the jurisprudence.
It is well established that a defendant is limited to the grounds for objection articulated at trial; a new basis for objection, albeit meritorious, cannot be raised for the first time on appeal. LSA-C.Cr.P. art. 841; State v. Clayton, supra (on rehearing), State v. Guidroz, 498 So.2d 108 (La.App. 5th Cir.1986). Consequently, the defendant cannot now on appeal complain about hearsay evidence of motive since he failed to urge that ground for his objection at trial.
This assignment lacks merit.
*256 The convictions and sentences of both defendants are affirmed.
AFFIRMED.
NOTES
[1] See State v. Myers, No. 88-K-778 (La.App.5th Cir. October 28, 1988).
[2] Fontanille's assignment number two and Myers assignment number one.
[3] Fontanille's assignment number six and Myers assignment number three.
[4] Janet received eight or more head injuries.
[5] Bloodspatter results when blood escapes from the body and is deposited on the surroundings. The bloodspatter does not travel horizontally unless an external force "is supplied into the blood". This force would then cause an impact spatter. The rate of the velocity of the impact spatter i.e., low, medium or high, would depend on the amount of the force supplied into the blood.