hBROWN, J.
Defendant, Derrick Trieveno Mitchell, was charged with second degree murder, La. R.S. 14:30.1, and aggravated kidnaping, La. R.S. 14:44. A jury found him guilty of both charges. The trial court imposed two consecutive sentences of life imprisonment without benefit. Defendant has appealed, urging insufficiency of the evidence and excessiveness of the consecutive life sentences. We affirm.

FACTS

Responding to a call on March 22, 1998, Deputy Steve Rogers of the Lincoln Parish Sheriffs Department found a burned body buried in a shallow grave in the southern part of Lincoln Parish. The body was later identified as Charles “Lucky” Lewis.
Defendant was questioned and after advisement of his rights, gave a statement in which he admitted to beating and kidnap-ing Lewis on February 18 or 19,1998, then burying the body the following day. Defendant believed that Lewis had stolen cocaine from him worth $10,000 which defendant had hidden in the woods behind his family’s “old homeplace” on Mondy Road in Lincoln Parish. Lewis and Corey Brown were staying on this property.
With Darryl Lowery and Michael Lowery, defendant went to the old homeplace the night of the murder to get the cocaine. Lewis and Brown were both at the residence when defendant and the Lowerys arrived. When defendant was unable to find the cocaine, he accused Lewis of taking it. While in the house, defendant attempted to intimidate Lewis with a gun by shooting it twice into the floor and hitting Lewis “upside the head” with the gun. They all went outside to look for the cocaine while Darryl Lowery held Lewis. Darryl Lowery threw Lewis on the ground and defendant began beating Lewis. Defendant admitted hitting Lewis on the lower part of his body several times with a stick (something like a pine limb), and stated that nobody else hit Lewis with the stick.
^Defendant's statement indicates that at that point, Lewis was unable to walk. Darryl Lowery locked Lewis inside defendant’s car trunk. Lewis was bleeding from the head. Defendant drove off with Lewis locked in the trunk. Michael Lowery, Darryl Lowery and Corey Brown were passengers in the car. Defendant stated that he drove to the residence of his father, Willie Mitchell, and his father’s girlfriend, Janice Spencer. They lived in Ruston, also in Lincoln Parish. There defendant stated that he talked to his father and Spencer about the situation. He stated that his father and Spencer spoke to him about not getting into further trouble, and they both talked to Lewis about giving back the cocaine. Defendant related that he didn’t unlock the trunk at his father’s home. He then drove his passengers and the captive victim badk to the Mondy Road residence.
Willie Mitchell and Spencer both testified at trial, corroborating defendant’s statement. Both verified that during the *988 entire visit, Lewis was locked in defendant’s car trunk. Both Willie Mitchell and Spencer heard defendant threaten Lewis and heard Lewis’s protestations of innocence from inside the car trunk. After defendant and the others left their home, Willie Mitchell and Spencer called defendant’s sister, Patricia Mitchell, and the three of them drove out to the old home-place to try to stop defendant from getting into further trouble. Once there they all saw Lewis on the ground. They left shortly thereafter. Patricia Mitchell’s testimony at trial corroborated the testimony of Willie Mitchell and Spencer and defendant’s statement regarding the events of that night.
In his statement to the sheriffs deputy, defendant said that back at the Mondy Road residence, Lewis was tied up and left alone in a room on the floor overnight. Corey Brown was instructed to stay and keep an eye on Lewis and defendant and the Lowerys left. When defendant and Michael Lowery returned to the Mondy Road residence the next morning, they found Lewis dead. Defendant stated that he and Michael Lowery found the missing drugs that morning in a place ^further down into the woods than he had previously hidden the cocaine. Defendant and Michael Lowery then drove to Ruston to borrow defendant’s girlfriend’s car. They picked up Darryl Lowery and went back to the old homeplace on Mondy Road. There defendant, the Lowerys and Brown placed Lewis’s body in the trunk of the car and drove to a remote place off of CCC Road. There they attempted to burn Lewis’s body with gasoline and then buried the body using a piece of steel as a shovel. The car became stuck in the mud as they were leaving and defendant went to a neighbor’s house to use the phone. Defendant eventually got in touch with a relative, Barney Mitchell, who got the car out of the mud with his truck.
Defendant, Corey Brown, Darryl Lowery and Michael Lowery were charged with second degree murder, La. R.S.14:30.1, and aggravated kidnaping, La. R.S. 14:44.[1] The trial court determined that defendant’s statement was admissible and the statement was introduced into evidence at his trial.
In addition to defendant’s recorded statement, the jury heard testimony from the investigating officer and forensic and crime lab experts. The crime lab expert identified and testified about physical evidence recovered during the crime investigation: two pieces of broken wood which were allegedly used in the beating of Lewis and a steel bar used to bury the body.
The forensic pathologist testified regarding the severity of Lewis’s injuries. He stated that Lewis died of cerebral trauma secondary to bluntrforce trauma. Lewis also had numerous broken bones, including broken right and left tibias and fibulas and four broken ribs. The pathologist stated that it would take significant force to break one or both of the leg bones. There was extensive bruising over the front and back of Lewis’s right and left arms, chest, part of the abdominal wall and shins. There was also evidence of extensive bleeding over the scalp.
LThe jury heard testimony from the neighbor who let defendant use his phone on the morning the body was buried, and from Barney Mitchell, whose truck was used to get defendant’s girlfriend’s car out of the mud. These witnesses corroborated facts contained in defendant’s statement. As noted above, corroborating testimony was also given by defendant’s father, Willie Mitchell, his father’s girlfriend, Janice Spencer, and defendant’s sister, Patricia Mitchell.

DISCUSSION

Sufficiency of the Evidence

Defendant argues that the there was no evidence that he or anyone else had the specific intent to kill Charlie Lewis. *989 Defendant also contends that Lewis was not kidnaped with the intent to force him to give up anything of value, but to provide time for defendant to make a decision about what he should do next. According to defendant, it is possible that the blows that killed Lewis could have happened after defendant left the old homeplace that night. Defendant urges that Corey Brown had a motive to kill Lewis; the victim had tried to lay the blame on Brown for the missing cocaine.
La. R.S. 14:30.1, in pertinent part, defines second degree murder as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm; or when the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, second degree kidnapping, aggravated escape, drive-by shooting, armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
La. R.S. 14:10 provides that specific intent is the state of mind which exists when the circumstances indicate that the offender actively desired the proscribed criminal consequence to follow his act or failure to act. Specific intent, being a state of mind, need not be proved as a fact but may be inferred from the | .^circumstances involved and the actions of the accused. State v. Graham, 420 So.2d 1126 (La.1982); State v. Dorsey, 30,683 (La.App.2d Cir.06/24/98), 718 So.2d 466, writ denied, 98-2227 (La.12/18/98), 732 So.2d 54.
La. R.S. 14:44 provides that aggravated kidnaping is the doing of any of the following acts with the intent thereby to force Lewis, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender’s actual or apparent control: (1) the forcible seizing and carrying of any person from one place to another; (2) the enticing or persuading of any person to go from one place to another; or (3) the imprisoning or forcible secreting of any person.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333; State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (La.1992).
This court’s authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const, art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra; State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
lfiThe facts contained in defendant’s own statement alone show adequate support for the jury’s verdicts on both charges. Defendant admitted that he accused Lewis of stealing ten ounces of cocaine, that he hit Lewis several times with a pine limb, that he hit Lewis “upside the head” with a gun and fired the gun twice inside the house to scare Lewis. He also admitted to locking Lewis in the trunk of his car and driving him around to scare him into telling where the cocaine was hidden. Defendant stated that Lewis was bleeding from the head when he was put into the trunk. He also acknowledged that Lewis was tied up and left in the house on the homeplace overnight. Defendant then recounted how *990 Lewis’s dead body was discovered, burned, buried and how he and his friends disposed of the evidence. He admitted that he was the only person who hit Lewis with a “stick.”
The forensic expert’s testimony described numerous and severe injuries to Lewis’s body, all consistent with defendant’s own testimony regarding the nature of the beating defendant inflicted upon the victim with the “stick” and the gun. The severity of the attack indicates that defendant had a specific intent to at least inflict great bodily harm on Lewis. See State v. Myers, 584 So.2d 242 (La.App. 5th Cir. 1991), writ denied, 588 So.2d 105 (La.1991), cert. denied, 504 U.S. 912, 112 S.Ct. 1945, 118 L.Ed.2d 550 (1992). The physical evidence presented to the jury included two pieces of broken wood which defendant allegedly used to inflict the beating and the steel bar allegedly used to bury Lewis.
After viewing the evidence, both direct and circumstantial, in the light most favorable to the prosecution, a rational trier of fact could have found that defendant had the specific intent to kill or cause great bodily harm to Lewis, thus establishing all of the essential elements of second degree murder beyond a reasonable doubt. Defendant’s allegations that Corey Brown could have killed Lewis were obviously not given much weight by the jury. Great deference must be given to a jury’s 17decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra.
It is also clear from defendant’s statement, corroborated by the testimony of defendant’s own father and his father’s girlfriend, that defendant forcibly seized and carried Lewis in his car trunk from one place to another and that he imprisoned or forcibly secreted Lewis in the trunk with the intent to make Lewis give up something of value in order to secure Lewis’s release. After viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found all of the essential elements of aggravated kidnaping proven beyond a reasonable doubt.

Excessive Sentence

Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const, art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Caraway, 28,769 (La.App.2d Cir.10/30/96), 682 So.2d 856. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App.2d Cir.04/02/97), 691 So.2d 864.
La.C.Cr.P. art. 883 provides in pertinent part:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively.
It is within a trial court’s discretion to order sentences to run consecutively rather than concurrently. State v. McCray, 28,531 (La.App.2d Cir.08/21/96), 679 So.2d 543; State v. Derry, 516 So.2d 1284 (La.App. 2d Cir.1987), writ 8denied, 521 So.2d 1168 (La.1988). Concurrent sentences arising out of a single cause of conduct are not mandatory and consecutive sentences under those circumstances are not necessarily excessive. State v. Ortego, 382 So.2d 921(La.1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Pickett, 628 So.2d 1333 (La.App. 2d Cir.1993), writ denied, 94-0348 (La.05/20/94), 637 So.2d 476; State v. Nelson, 467 So.2d 1159 (La.App. 2d Cir.1985). When consecutive sentences are *991 imposed, the court shall state the factors considered and its reasons for the consecutive terms. State v. Green, 614 So.2d 758 (La.App. 2d Cir.1993).
In this case, the trial court noted that the evidence made it clear that these crimes were related to cocaine. The court read aloud defendant’s substantial criminal history outlined in the pre-sentence investigation report, noting the particularly heinous nature of this kidnapping and murder. The trial court also read aloud a victim impact statement. The trial court articulated various factors justifying consecutive sentences. See State v. Nelson, supra. We find adequate support in the record for consecutive sentences, which we also find are not constitutionally excessive.

CONCLUSION

For the reasons set forth above, defendant’s convictions and sentences are AFFIRMED.

. ' Defendant was the first of those charged in connection with Lewis’s death to go to trial.