h PLOTKIN, Judge.
Keith M. Guss was convicted of two counts of attempted first-degree murder, and initially sentenced to fifty years at hard labor on each count, to run concurrently. Subsequently, the court reduced the sentence to ten years on each count, to run concurrently. Frederick Vereen was convicted of second-degree murder, and sentenced to life imprisonment at hard labor. Both defendants appeal their convictions. We affirm for the reasons below.

STATEMENT OF THE CASE:

On May 7, 1998, the defendants were charged by grand jury indictment with one count of second-degree murder of Nathaniel Clark, and two counts of attempted first-degree murder of a police officer. La. R.S. 14:30.1; La. R.S. 14:27(30)(A)(2).[1] They were arraigned May 12, 1998, and pleaded not guilty. Defendant Guss elected trial by judge and defendant Vereen elected trial by jury. On December 8, 1998, a twelve-member jury found Vereen guilty as charged of second-degree murder and not guilty of the attempted murder charges. The judge found Guss not guilty of second-degree murder and guilty as charged as to the two counts of attempted first-degree murder. On December 14, 1998, Vereen was [^sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Guss was sentenced to fifty years at hard labor on each count, to run concurrently. Guss filed a motion to reconsider sentence and a motion for appeal that same day. The trial court granted the motion to reconsider the sentence on February 24, 1999, and resentenced Guss to ten years at hard labor on each count, concurrent.

FACTS:

Officers Cedric Skinner and Sean Dupre were in the area of Louisiana and Claiborne Avenues when they heard gunshots coming from the intersection. They saw three men getting into a red Chevrolet Corsica outside the Jazz Daiquiri Shop; one carried an assault rifle over his shoulder. Before the three men got into the car, the officers saw gunfire coming towards their direction. A car chase ensued. The Corsica eventually hit a fireplug, and the men ran from the car. At that point, Guss turned and pointed an assault rifle in the direction of the officers. Officer Dupre fired two shots at Guss and ordered him to drop the weapon. Guss dropped the gun and then ran from the scene. Guss was caught after the officers chased him on foot, and the AK-47 rifle containing sixty live rounds was recovered from the middle of the street. The other two men escaped.
Detective Jimmy Turner testified that he responded to the call of the other officers’ need for help at Louisiana and Claiborne. Detective Turner testified that he found Nathaniel Clark dead, lying in the door of the Hit and Run Liquor Store, which was next to Jazz Daiquiri. He had been shot more than twenty-four times, and, according to the pathologist, the wounds suggested he had been shot from *624 three different positions. There were in fact over a hundred wounds to the victim lawhen the fragment wounds were added to the total. The injuries to the internal organs suggested that an attack weapon had been used and that the bullets employed were the type that disintegrate into fragments for the specific purpose of tearing tissue. Officers learned the names “Frederick” and “Corey” at the scene as participants in the crime. The owner of the store turned over a videotape that was played for the jury. Detective Turner said he prepared photographic lineups and showed them to Chantrell Green who identified Vereen and Bolden, and to Theron Hurel who identified Vereen.
A ballistics expert testified that all of the bullets recovered in the autopsy and all of the casings found at the scene had been fired from an AK-47 rifle. A bullet recovered from the Corsica had been fired from an unknown nine millimeter weapon.
A fingerprint expert testified that Ver-een’s fingerprints were found on the Coris-ea. The Corsica was registered to defendant Vereen and Mike Vereen.
Theron Hurel testified that he was a friend of Clark, and that they had met at the daiquiri shop just after midnight on March 21, 1998. The two then walked over to a pay phone, and turned back in the direction of the store. At that point, he saw Vereen approach and shoot Clark. Hurel then ran from the scene, but returned after the police arrived, to find out whether his friend was dead or alive. Hu-rel later went to the police station, where he viewed a photographic lineup and identified Vereen as the man who shot Clark.

ERRORS PATENT:

A review of the record for errors patent reveals none.

JjGUSS:

ASSIGNMENT OF ERROR:

Defendant Guss argues that the State produced insufficient evidence to support his convictions of two counts of attempted first-degree murder.
In State v. Girod, 94-853 (La.App. 5 Cir. 3/15/95), 653 So.2d 664, the Fifth Circuit reviewed the law on point where an officer stopped a car containing three men; two of them were defendants (Girod and Ma-gee) charged with the attempted first degree murder of a police officer:
Pertinent to the instant case, first degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm upon a fireman or peace officer (which includes a deputy sheriff) engaged in the performance of his lawful duties. LSA-R.S. 14:30(A)(2)(6). Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. LSA-R.S. 14:30.1. State v. Myers, 584 So.2d 242, 248-50 (La.App. 5th Cir.), writ denied, 588 So.2d 105 (La.1991), cert. denied, 504 U.S. 912, 112 S.Ct. 1945, 118 L.Ed.2d 550 (1992). The crime of attempted murder, [94-853 La.App. 5 Cir. 6] whether first or second degree, requires proof of the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. State v. Huizar, 414 So.2d 741, 746 (La.1982); State v. Strother, 362 So.2d 508, 509 (La.1978); State v. Butler, 322 So.2d 189 (La.1975). The specific criminal intent required does not have to be proven as fact, but may be inferred from the circumstances and actions of the defendant. State v. Boyer, 406 So.2d 143 (La.1981). Furthermore, all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid or abet in its commission, or directly or indirectly counsel or procure another to commit the crime are principals. LSA-R.S. 14:24. Only those persons who knowingly participate in the planning or execution of a crime are principals. State v. Pierre, 93-0893 (La.2/3/94), 631 So.2d *625 427, 428. Moreover, an individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state. It is not enough to find merely that Girod had the necessary mental state, since this intent cannot be inferred to Magee. See State v. Pierre, supra, and State v. Holmes, 388 So.2d 722, 726 (La.1980).
In evaluating the sufficiency of the evidence, the standard to be used by the appellate court is whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could [Bhave found the defendant guilty beyond a reasonable doubt of every element of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305 (La.1988); State v. Myers, 584 So.2d at 249. The rule as to circumstantial evidence (when used to prove an offense) is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438. This is not a purely separate test from the Jackson standard to be applied instead of the sufficiency of the evidence standard whenever circumstantial evidence forms the basis for the conviction. [94-853 La.App. 5 Cir. 7] Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational trier of fact that the defendant is guilty beyond a reasonable doubt. State v. Porretto, 468 So.2d 1142 (La.1985); State v. Myers, 584 So.2d at 249.
The appellate court’s primary function is not to redetermine a defendant’s guilt or innocence in accordance with its appreciation of the facts and credibility of the witnesses. Rather, its function is to review the evidence in the light most favorable to the prosecution and determine whether there is sufficient evidence to support the verdict. State v. Myers, 584 So.2d at 250; State v. Burrow, 565 So.2d 972, 977 (La.App. 5 Cir. 1990), writ denied, 572 So.2d 60 (La.1991).
Girod, 653 So.2d at 668.
This court relied on the above reasoning in finding that when evidence is presented that a shot was fired in the direction of a police officer, attempted first degree murder of a police officer is proven. State v. Pittman, 604 So.2d 172 (La.App. 4 Cir.1992), unit denied, 610 So.2d 796 (La.1993). See also State v. Davis, 26,682 (La.App. 2 Cir. 3/1/95), 651 So.2d 323, writ denied, 95-1093 (La.1/31/97), 687 So.2d 395; State v. Turner, 626 So.2d 890 (La.App. 3 Cir.1993), writ denied, 93-3182 (La.4/4/94), 635 So.2d 1122.
In the present case, the officers testified that they were fired upon at the intersection of Claiborne and Louisiana streets. However, there was conflicting testimony by Officer Dupre as to whether the officers were fired upon a second time.
LAs to the first shots that were fired at the officers, the officers testified that when they approached the intersection of Claiborne and Louisiana, they observed three men moving towards a car. One of the men carried an assault rifle over his shoulder. As the officers approached, the man with the weapon fired upon them. The officers could not identify who fired the shots.
Officer Skinner testified that after he and his partner pursued the men in the car, and the car stopped, he observed the men exit the vehicle. He testified that one man then pointed a gun towards the officers. Officer Dupre then fired shots at the man, and told him to drop the gun. The man, later identified as Guss, dropped the gun and ran from the scene.
On direct examination, Officer Dupre testified that after the chase, when the men exited the vehicle, one man pointed a gun towards the officers. The officers yelled at the man to drop the gun. Then Officer Dupre fired two shots at the man, who then dropped the gun and ran. Dur *626 ing direct examination of Officer Dupre, the following questioning occurred:
Q And the person in the back set [sic], Mr. Guss, who you apprehended, pointed and fired that weapon at you?
A Yes.
Mr. JENKINS: Objection
THE COURT: Sustained
EXAMINATION BY MR. COMAN:
Q Who pointed and fired that weapon at you? What was his name?
A That would have been Keith Guss.
|70n cross-examination Officer Dupre testified as follows:
Q Now, the prosecutor asked you something and it was sort of a trick question. He pointed it and fired. He pointed it and put it down but you actually fired your weapon, correct?
A Correct.
A close examination of the testimony of the police officers reveals a discrepancy in the facts of what occurred that night. Officer Skinner testified that Guss “aimed that [assault rifle] at us and my partner shot him.” Officer Skinner did not testify that Guss fired the gun when he got out of the car. Officer Dupre however at first stated that “the guy on the rear left side of the car exited and he had an assault type rifle and pointed it in our direction and we yelled at him to drop the gun. I fired two shots and the guy threw down the gun and ran.” Officer Dupre later answered “yes” to the prosecutor’s question as to whether Guss shot at the officers. Defense counsel never pushed the witnesses so far as to get a clear response that, definitively Guss did not fire at the officers when he got out of the car.
The ballistics expert testified that all of the spent casings found at the scene came from the recovered rifle. Guss was found in possession of the rifle within a short time and distance from where he exited the vehicle.
Even if Guss did not fire at the police officers, he may still be found guilty of attempted first-degree murder of the officers under the principal theory. A reasonable trier of fact could have concluded that Guss had the requisite specific intent to kill or that he had aided and abetted in the commission of the crime of attempted murder of police officers. The eyewitness testimony coupled with the |stestimony of the officers supports a finding of a transfer of the rifle from Vereen to Guss, after the killing of Clark but prior to the end of the police chase. Guss was found in possession of the weapon that had been used to fire upon the officers. Guss pointed that same firearm in the direction of the officers. From the evidence presented, a reasonable trier of fact could have concluded that Guss had intended to kill the police officers that impeded the group’s get away from the scene of the murder.
We find that the trial court was within its discretion to find Officer Dupre credible when he answered the prosecutor on direct that Guss aimed and fired at him when he exited the car. We find that the evidence supports a finding that Vereen transferred the weapon to Guss. Furthermore, under the principal theory, the evidence is sufficient to support a finding that Guss had the requisite intent to kill the police officers. Accordingly, the evidence is sufficient to support the convictions.
This assignment is without merit.

VEREEN:

ASSIGNMENT OF ERROR ONE:

The defendant argues the trial court erred in failing to conduct a hearing and rule on the motion for new trial.
Counsel who had served as trial counsel, was not present at the sentencing, and counsel for Guss stood in to represent Vereen as he faced the mandatory sentence of life imprisonment. Because his trial counsel was not present, however, the court stated it would allow the defendant to file motions at a later date. The motion was eventually filed. A hearing was held on the motion February 25, 2000, |9and the motion was denied. The basis of the mo *627 tion was that the verdict was contrary to the law and evidence, an issue fully reviewed herein. The motion also mentioned ineffective assistance of counsel, but made no specific allegations, and the defendant does not argue that issue on appeal.
This assignment is without merit.

ASSIGNMENT OF ERROR TWO:

The defendant argues that there was insufficient evidence to support a finding that he shot Clark.[2] Hurel unequivocally testified that the defendant shot Clark. The victim was wounded one hundred times by an assault weapon. The evidence was sufficient to support the conviction for second-degree murder.
This assignment is without merit.

ASSIGNMENT OF ERROR THREE:

Defendant argues that the trial court erred in allowing the State to impeach character witness testimony with evidence of defendant’s alleged arrest on an armed robbery charge.
The defendant called one witness, Ellen Honere, as a character witness. Honere is a member of the defendant’s church. She testified that she had never known the defendant to carry a gun, she was familiar with his general reputation, she had never known him to be violent, and that she thought he was a respectful young man. In chambers, the parties discussed the State’s intent to question the |inwitness concerning specific conduct, i.e., a pending prosecution for armed robbery. The defense objected on the ground that there had not yet been any hearings on the armed robbery, and that the State had not brought forth any witnesses to support the allegations of armed robbery. The defense argued that any relevance the evidence might have would be outweighed by prejudice to the defendant.
The trial court read into the record articles 404 and 405 of the Code of Criminal Procedure. The court found the State had the right to question the witness concerning her knowledge of the armed robbery charges. The State then asked the witness in open court, “[A]re you aware or have you heard that Mr. Vereen has an outstanding arrest for armed robbery?” to which the witness responded, “No.” The defense moved for mistrial, and the court overruled. The State then asked, “[A]re you aware or have you heard that that charge was accepted for prosecution.” Again the defense objected, and the trial court said, “Right. Move on.”
The purpose of cross-examination of a defense character witness, is to expose the witness’s possible lack of knowledge regarding the character of the defendant. State v. Bagley, 378 So.2d 1356, 1358 (La.1979). Cross-examination may properly extend to the witness’s knowledge of particular misconduct, prior arrests, or other acts relevant to moral qualities pertinent to the defendant’s crime. State v. Rault, 445 So.2d 1203, 1209 (La.1984), cert. denied, Rault v. Louisiana, 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 154 (1984).
Here, the witness was asked whether she knew about a pending arrest for armed robbery. This case involves a weapon, as does the crime of armed robbery. The cross-examination was proper.
This assignment is without merit.
|, ^ASSIGNMENT OF ERROR FOUR:
The defendant argues the videotape was improperly introduced because a proper foundation was not laid. Specifically, he argues the State did not prove the chain of custody. Detective Turner testified the owner of the store gave the tape to Lieutenant Winn who gave it to Detective Turner, who placed it into evidence. The tape was later given to the FBI for video enhancement before being returned.
To be admissible, demonstrative evidence must be identified and authenticated. La. C.E. art. 901. As a foundation for admitting demonstrative evidence, it *628 must be established that the object sought to be introduced is more probably than not connected with the case. State v. Tatum, 506 So.2d 584, 589 (La.App. 4 Cir.1987); State v. Matthews, 95-1245 (La.App. 4 Cir. 8/21/96), 679 So.2d 977, 984, writ denied, 96-2332 (La.1/31/97), 687 So.2d 403. A lack of positive identification of demonstrative evidence or its chain of custody goes to the weight of the evidence, not to its admissibility, and the connection of that evidence to the case is a factual matter to be determined by the trier of fact. State v. Lewis, 452 So.2d 720, 726 (La.App. 4 Cir.), vacated in part, 457 So.2d 1187 (La.1984).
Here, the only time the tape left the evidence room was when it was given to the FBI for enhancement. The tape showed the killing of Clark at the Hit and Run Liquor Store. The jury was free to give the tape its proper weight.
This assignment is without merit.

\ ^CONCLUSION:

For the reasons cited above, we affirm the convictions and sentences of Guss and Vereen.

AFFIRMED.

. Corey Bolden was also named in the indictment.

. The substantive law is set out above, in Guss' assignment of error.