GRISBAUM, Judge.
The defendant was charged by grand jury indictment with two counts of first-degree murder in violation of La.R.S. 14:30(A)(3). At arraignment, he pled not guilty. The defendant then moved to quash the indictment as to the second count, and the trial court granted this motion. The State took writs which this Court granted and set aside the trial court’s ruling quashing the second count of the indictment on the ground of prematurity “inasmuch as jeopardy had not yet attached.” After a jury trial, the defendant was found guilty as charged and the jury recommended life imprisonment on each count. After waiving all delays for sentencing, the defendant was sentenced to serve life imprisonment, without benefit of parole, probation, or suspension of sentence on each count to run consecutively. He appeals the conviction and sentence. We affirm, overruling our previous decision in State v. Williams, 461 So.2d 1118 (La.App. 5th Cir. 1984).
The principal question presented is whether the defendant’s convictions for both counts of first-degree murder place *1125 him in double jeopardy. Defendant claims the murder of Joan Gormin was used to enhance the murder of Tom Gormin, and the murder of Tom Gormin was used to enhance the murder of Joan Gormin.
PACTS
After drinking for some time during the night and early morning hours of March 30 and 31, 1987 at the River Ridge Bar, the defendant, Jerrald Wilson, and one of the victims, Tom Gormin, went to the home Tom shared with his mother, Joan Gormin. Later that day the defendant drove to Baton Rouge and subsequently to New Iberia in Tom Gormin’s Ford Bronco. About noon on March 31, 1987, the police found the bodies of Tom and Joan Gormin in their home in River Ridge. Tom had been stabbed numerous times and was found in the kitchen. He was clad only in briefs. A shirt containing spots of the defendant’s blood covered Tom’s face. Joan Gormin was strangled and stabbed. A “T”-shaped incision was carved in her abdomen. Her body was found clad in night clothes in a spare bedroom. Evidence showed that a footprint-which matched the defendant’s tennis shoe was found in some of the blood which covered the floor throughout the house. Further, pubic hair which matched the defendant’s was found in two of the bedrooms, including the one containing Joan Gormin’s body. Large butcher knives were found in the kitchen sink.
According to the defendant’s testimony, he worked as a dancer and male prostitute and was propositioned by Tom Gormin to perform an act of oral sex for $20. He further testified that during the sexual encounter he fell asleep or passed out and was awakened by Tom Gormin, who was wielding a butcher knife and threatening either castration or death. Wilson claimed he wrestled the knife from Gormin and stabbed him in the neck. He described a knife fight between himself and Gormin which ended with Tom’s demise from numerous stab wounds. The defendant stated he had no knowledge of how Joan Gor-min died. He said he found her body after killing Tom and checked to see if she was still alive. He then fled in Tom’s vehicle and was arrested a few days later in New Iberia.
LAW
La.R.S. 14:30(A)(3) states, “First degree murder is the killing of a human being: When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person.”
La.C.Cr.P. art. 591, in part, states, “No person shall be twice put in jeopardy of life or liberty for the same offense....”
La.C.Cr.P. art. 596 provides:
Double jeopardy exists in a second trial only when the charge in that trial is:
(1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
(2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial.
In 1984, this Court was presented with an identical legal issue involving two counts of first-degree murder. In State v. Williams, supra, at 1126-27 (La.App. 5th Cir.1984),[1] this Court pronounced:
[T]he evidence before us is not sufficient to support a conviction of two counts of first degree murder. Under the evidence presented to the jury in this case, the only provision of R.S. 14:30 which could be used to support a conviction of first degree murder is Part 3 of that statute which applies when the offender had a specific intent to kill or inflict great bodily harm upon more than one person. Here Williams’ intent to kill Norman was used to enhance the killing of Harrell to first degree murder. Then Williams’ intent to kill Harrell was used to enhance the killing of Norman to first degree murder. Thus, Williams was convicted and sentenced on both first degree murder indictments.
*1126 In State v. Steele, 387 So.2d 1175 (La.1980), the supreme court at page 1177 said:
“If the evidence required to support a finding of guilty of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one....”
* * # He * *
“the central idea being that one should not be punished (or put in jeopardy) twice for the same cause of conduct.”
On this premise in State v. Cotten, 438 So.2d 1156 (La.App. 1st Cir.1983) a conviction of first degree murder was held to preclude an indictment for attempted armed robbery arising from the same event. The theory for the doctrine is that since the defendant has already been punished for the felony as that was a major element of a felony murder conviction, he cannot be tried for the felony itself. See State v. Stewart, 400 So.2d 633 (La.1981).
We note that in 1986, the Fourth Circuit Court of Appeal succinctly recited the double jeopardy test used in Louisiana and reached a different result in State v. Gerrel, 499 So.2d 381, 382-83 (La.App. 4th Cir.1986), writ denied, 515 So.2d 1106, 1107 (La.1987):
Defendant was ... charged with and convicted of two counts of first degree murder pursuant to La.R.S. 14:30(A)(3).
Defendant appeals his conviction and sentence asserting that the conviction on both counts violates his constitutional guarantee against double jeopardy.
In State v. Vaughn, 431 So.2d 763 (La.1983) our Supreme Court pointed out that Louisiana utilizes both the “same evidence” test and the “Blockburger” test in determining whether double jeopardy applies. The “same evidence” test was enunciated in State v. Steele, 387 So.2d 1175 (La.1980), as follows:
“If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one.” Id. at 1177.
The Blockburger test for double jeopardy is whether one crime requires proof of an element which the other does not. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1982).
Defendant cites the recent holding of our brethren of the Fifth Circuit in State v. Williams, 461 So.2d 1118 (La.App. 5th Cir.1984) in support of his argument. While we agree that Williams is factually similiar, we disagree with its holding. In Williams the Court, using the “same evidence” test held that defendant’s intent to kill victim A was used to enhance victim B’s homicide to first degree murder, and that the intent to kill victim B was used to enhance victim A’s homicide to first degree murder. Thus, one count was barred by a plea of double jeopardy.
Using either the “same evidence” or Blockburger test we are of the opinion the Williams court was in error. Under R.S. 14:30(A)(3), first degree murder is defined as “... the killing of a human being ... [w]hen the offender has a specific intent to kill or inflict great bodily harm upon more than one person.” There are two necessary elements of the crime. First, the killing of a human, and second, specific intent to kill or inflict great bodily harm on another human. Thus, when defendant killed Jones, he had to have specific intent to kill or inflict great bodily harm to Hardy. The statute does not require proof that defendant actually killed Hardy, only that defendant had the specific intent to do so. The fact of Hardy’s death merely supports the finding of a specific intent to kill or inflict great harm. Thus, to convict defendant for the first degree murder of Jones it is not necessary to prove that he also killed Hardy, only that he had the specific intent to do so. We believe this is where our brethren in the Williams case erred. The actual killing of the other person is not a necessary element.
*1127 In State v. Willie, 360 So.2d 813 (La.1978), cert. den., 443 U.S. 901, 99 S.Ct. 3092, 61 L.Ed.2d 870 (1978) our Supreme Court reviewed the evidence which supported defendant’s intent to kill another person while actually killing the victim. Even though the “other” person was not killed, the evidence of specific intent was sufficient to convict the defendant of the first degree murder of the victim he actually killed. In the case before us, part of the evidence of the specific intent to inflict harm or kill another is that the other person was in fact killed, although, as previously stated, the actual killing of another is not a necessary element of the crime.
We therefore conclude that the elements necessary to convict defendant of the first degree murder of Jones, does not require proof of the actual killing of Hardy, only the specific intent to do so. The converse is true for the first degree murder of Hardy. Thus, under the “same evidence” test, the evidence required to convict on one count of first degree murder would not support the conviction on the other count. And, under the Blockburger rationale, count one requires proof of an additional element or fact, i.e. the actual killing of Jones, that a conviction under count two does not. That is, a conviction for the first degree murder of Hardy, does not require proof of the actual killing of Jones, whereas a conviction for the first degree murder of Jones requires proof of the actual killing of Jones. Any other conclusion would lead to the absurd result that a criminal would have nothing to lose by killing two people instead of one especially where the second victim would be in a position to make a positive identification.[2]
Review of the historical and societal policies underlying the double jeopardy concept[3] reveals that the Fourth Circuit’s analysis in Gerrel does not frustrate any of those principles. Moreover, that analysis avoids the undesirable result permitted under Williams whereby a criminal has nothing to lose by killing two people instead of one, especially where the second victim would be in a position to make a positive identification. For those reasons, we agree with the Fourth Circuit’s analysis in Gerrel and find that using either the “same evidence” or the Blockburger test, the Williams court erred because under La. R.S. 14:30(A)(3) there are two necessary elements of the crime: (1) the killing of a human and (2) the specific intent to kill or inflict great bodily harm on another human. Thus, the statute does not require proof that the defendant actually killed or inflicted great bodily harm upon the second *1128 victim, only that he had the specific intent to do so. Therefore, the elements necessary to convict Wilson of the first-degree murder of Joan Gormin do not require proof of the actual killing of Tom Gormin, only the specific intent to do so. The converse is true for the first-degree murder of Tom Gormin. Thus, under the “same evidence” test, the evidence required to convict on one count of first-degree murder would not support the conviction on the other count. Under the Blockburger test, count one requires proof of an additional element or fact, i.e., the actual killing of Joan Gormin, that a conviction under count two does not. Thus, a conviction for the first-degree murder of Tom Gormin does not require proof of the actual killing of Joan Gormin, but a conviction for the first-degree murder of Joan Gormin requires proof of the actual killing of Joan Gormin. Ergo, there exists no double jeopardy.
Other issues have been raised, which we find have no merit.
For the reasons assigned, Williams, supra, is overruled, and the conviction and sentence of the trial court are affirmed.
AFFIRMED.
KLIEBERT and DUFRESNE, JJ., dissent.

. This opinion was not appealed.

. The Louisiana Supreme Court denied writs in the Gerrel case and merely stated, "There is no merit to the double jeopardy claim_”

. One of the best statements of the historical and social policy behind the double jeopardy concept is located in Comment, 65 Yale L.J. 339, 341 (1956). It is quoted in the Official Revision Comment to La.C.Cr.P. art. 596 and reads as follows:
"The prohibition against double jeopardy found in the federal and most state constitutions represents two distinct policies: that no person should be punished more than once for the same offense, and that no one should be harassed by successive prosecutions for a single wrongful act or activity. The ban on multiple punishment imposes a limitation on judicial interpretation of substantive criminal law. It forbids penalizing an accused more severely than the law provides, through the device of finding that he has committed several violations of substantive law where only one exists. The restriction on multiple prosecutions, on the other hand, is designed to implement several procedural objectives. One of these is protection of both the defendant and the public from the expense of prolonged and unnecessary litigation due to the retrial of previously adjudicated issues, or to the use of several proceedings to try questions of fact and law that logically make up a single case. Another objective is to safeguard the accused from the excessive harassment and stigma of repeated criminal prosecutions. Furthermore, once acquitted or convicted of crime for his conduct in a particular transaction, a defendant should be able to consider the matter closed and plan his life ahead without the threat of subsequent prosecution and possible imprisonment for the same conduct. These three principal objectives — economy, time and money, avoidance of unnecessary harassment and stigma, and psychological security — are expressed in the maxim that no one shall be twice vexed for the same cause.”