631 So.2d 1213 (1994)
STATE of Louisiana
v.
Jerrald WILSON.
No. 93-KA-617.
Court of Appeal of Louisiana, Fifth Circuit.
January 25, 1994.
*1215 John M. Mamoulides, Craig Gibbs, Dorothy A. Pendergast, Dist. Attorney's Office, Gretna, for plaintiff/appellee.
Kevin V. Boshea, New Orleans, for defendant/appellant.
Before BOWES, GRISBAUM and GOTHARD, JJ.
GOTHARD, Judge.

PROCEDURAL HISTORY OF THE CASE
On April 16, 1987, a Jefferson Parish Grand Jury filed an indictment charging defendant, Jerrald[1] L. Wilson, with two counts of first degree murder, in violation of LSA-R.S. 14:30. At the May 29, 1987 arraignment, defendant pled not guilty.
The trial in this matter began on February 1, 1988 and lasted through February 6, 1988. After considering the evidence presented, the jury unanimously found defendant guilty as charged on both counts. The jury, following a sentencing hearing, recommended that defendant be sentenced to life imprisonment on each count without the benefit of probation, parole, or suspension of sentence.
The defendant subsequently filed a motion for new trial and motion for post-verdict judgment of acquittal. The trial judge denied both motions. After defendant waived all delays for sentencing, the trial judge sentenced defendant to life imprisonment without the benefit of probation, parole, or suspension of sentence on each count, to run consecutively.
On March 4, 1988, defendant filed a motion for appeal. This court, on February 15, 1989, affirmed defendant's conviction and sentence. See State v. Wilson, 538 So.2d 1124 (La.App. 5th Cir.1989). On August 29, 1991, defendant filed a uniform application for post-conviction relief and a memorandum in support thereof. On October 22, 1991, the district court denied defendant's application for post-conviction relief. Pursuant to a writ application filed by defendant, this court remanded the case to the district court to order an answer from the state to defendant's application for post-conviction relief. On June 17, 1992, the state filed its response. On July 16, 1992, the district court denied defendant's application for post-conviction relief.
On April 7, 1993, defendant's present counsel was formally enrolled and thereafter filed a notice of intent to seek review of the district court's July 16, 1992 denial of defendant's post-conviction application. On June 16, 1993, this court granted a writ of review, ordered that the record be prepared and lodged and that the matter be docketed in accordance with established appellate procedure.

FACTS
The following facts are taken from this court's opinion in defendant's prior appeal, State v. Wilson, supra at 1125:
After drinking for some time during the night and early morning hours of March 30 and 31, 1987 at the River Ridge Bar, the defendant, Jerrald Wilson, and one of the victims, Tom Gormin, went to the home Tom shared with his mother, Joan Gormin. Later that day the defendant drove to Baton Rouge and subsequently to New Iberia in Tom Gormin's Ford Bronco. About noon on March 31, 1987, the police found the bodies of Tom and Joan Gormin in their home in River Ridge. Tom had been stabbed numerous times and was found in the kitchen. He was clad only in briefs. A shirt containing spots of the defendant's blood covered Tom's face. Joan Gormin was strangled and stabbed. A "T"-shaped incision was carved in her *1216 abdomen. Her body was found clad in night clothes in a spare bedroom. Evidence showed that a footprint which matched the defendant's tennis shoe was found in some of the blood which covered the floor throughout the house. Further, pubic hair which matched the defendant's was found in two of the bedrooms, including the one containing Joan Gormin's body. Large butcher knives were found in the kitchen sink.
According to the defendant's testimony, he worked as a dancer and male prostitute and was propositioned by Tom Gormin to perform an act of oral sex for $20. He further testified that during the sexual encounter he fell asleep or passed out and was awakened by Tom Gormin, who was wielding a butcher knife and threatening either castration or death. Wilson claimed he wrestled the knife from Gormin and stabbed him in the neck. He described a knife fight between himself and Gormin which ended with Tom's demise from numerous stab wounds. The defendant stated he had no knowledge of how Joan Gormin died. He said he found her body after killing Tom and checked to see if she was still alive. He then fled in Tom's vehicle and was arrested a few days later in New Iberia.

ASSIGNMENT OF ERROR NUMBER ONE
That the trial court respectfully did err in its instructions to the jury. Specifically that the court did err in its instructions regarding reasonable doubt.
Defendant complains about the following charge given the jury, without objection from the defense, regarding reasonable doubt:
The defendant is presumed to be innocent until each element of the crime necessary to constitute his guilt is proven beyond a reasonable doubt. The defendant is not required to prove that he is innocent, thus the defendant begins the trial with a clean slate. The burden is upon the State to prove the defendant's guilt beyond a reasonable doubt. In considering the evidence, you must give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence. If you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find him not guilty.
Reasonable doubt:
If you entertain any reasonable doubt as to any facts or element necessary to constitute the defendant's guilt, it is your sworn duty to give him the benefit of that doubt and return a verdict of acquittal. Even where the evidence demonstrates a probability of guilt, yet it does not establish it beyond a reasonable doubt, you must acquit the accused. This doubt must be a reasonable one; that is one founded upon a real, tangible, substantial basis and not upon mere caprice, fancy or conjecture. It must be such a doubt as it would give grave uncertainty raised in your minds by reason of the unsatisfactory character of the evidence. One that would make you feel that you had not an abiding conviction to a morale certainty of the defendant's guilt. If after giving a fair and impartial consideration to all the facts in the case, you find the evidence unsatisfactory upon any single point indispensably necessary to constitute the defendant's guilt, this would give rise to such a reasonable doubt as would justify you in rendering a verdict of not guilty.
The prosecution must establish guilt by legal and sufficient evidence beyond a reasonable doubt. But the rule does not go further and require a preponderance of testimony. It is incumbent upon the State to prove the offense charged or legally included in the indictment to your satisfaction and beyond a reasonable doubt.
A reasonable doubt is not a mere possible doubt. It should be an actual or substantial doubt. It is such a doubt as a reasonable man could givewould seriously entertain. It is a serious doubt for which you can give good reason.
LSA-C.Cr.P. art. 804A provides in pertinent part:
A. In all cases the court shall charge the jury that: (1) A person accused of crime is presumed by law to be innocent until each element of the crime, necessary *1217 to constitute his guilt, is proven beyond a reasonable doubt;
(2) It is the duty of the jury, in considering the evidence and in applying to that evidence the law as given by the court, to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case; and (3) It is the duty of the jury if not convinced of the guilt of a defendant beyond or out of the lack of evidence in the case; and
(3) It is the duty of the jury if not convinced of the guilt of a defendant beyond a reasonable doubt, to find him not guilty.
The court may, but is not required to, define "the presumption of innocence" or "reasonable doubt" or give any other or further charge upon the same than that contained in this article.
In state criminal trials, the Due Process Clause of the Fourteenth Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
In State v. Cage, 554 So.2d 39 (La. 1989), defendant was convicted of first degree murder, and was sentenced to death. He thereafter appealed, alleging that the reasonable doubt instruction was prejudicial. The instruction, which is similar to the one given in the case before us, provided in pertinent part:
If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. It must be such a doubt as would give rise to a grave uncertainty, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. It is an actual substantial doubt. It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a moral certainty. Cage, 554 So.2d at 41.
The Louisiana Supreme Court affirmed defendant's conviction and sentence, and concluded that the definitions of reasonable doubt, out of context, might have confused the jury, but, in context, the definitions did not overstate the requisite degree of uncertainty. Defendant thereafter applied for a writ of certiorari to the United States Supreme Court on the ground that the reasonable doubt instruction was constitutionally defective. After granting certiorari, the United States Supreme Court reversed defendant's conviction and sentence because the trial judge's instruction on reasonable doubt violated the Due Process Clause of the Fourteenth Amendment. In Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), the United States Supreme Court reasoned as follows:
... It is our view, however, that the instruction at issue was contrary to the "beyond a reasonable doubt" requirement articulated in Winship.

In construing the instruction, we consider how reasonable jurors could have understood the charge as a whole. Francis v. Franklin, 471 U.S. 307, 316, 105 S.Ct. 1965, 1972, 85 L.Ed.2d 344 (1985). The charge did at one point instruct that to convict, guilt must be found beyond a reasonable doubt; but it then equated a reasonable doubt with a "grave uncertainty" and an "actual substantial doubt," and stated that what was required was a "moral certainty" that the defendant was guilty. It is plain to us that the words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. When those statements are then considered with the reference to "moral certainty," rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of *1218 guilt based on a degree of proof below that required by the Due Process Clause.
The matter was thereafter remanded to the Louisiana Supreme Court for further proceedings. On remand, State v. Cage, 583 So.2d 1125 (La.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 211, 116 L.Ed.2d 170 (1991), the Louisiana Supreme Court addressed two issues: (1) whether the jury instruction on reasonable doubt is subject to the harmless error analysis adopted in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); and (2) if so, whether the instruction was harmless in Cage's trial. The Court concluded that the reasonable doubt instruction given by the trial judge during the guilt phase of defendant's trial was a "trial error" (as opposed to a structural defect) and therefore was subject to the Chapman harmless error analysis. The Court then concluded that viewing the record as a whole, the jury had sufficient evidence to find defendant guilty beyond a reasonable doubt of first degree murder and to find the existence of a statutory aggravating circumstance beyond a reasonable doubt. Since the erroneous instruction did not contribute to defendant's conviction or sentence, the court held that the erroneous instruction was harmless beyond a reasonable doubt.
On June 1, 1993, the United States Supreme Court decided Sullivan v. Louisiana, ___ U.S. ___, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), which addressed the issue of whether a constitutionally deficient reasonable doubt instruction may be harmless error. In Sullivan, the trial court, in its instructions to the jury, gave a definition of "reasonable doubt" that was essentially identical to the one held unconstitutional in Cage v. Louisiana, supra. The jury found defendant guilty of first degree murder; and in accordance with the jury's recommendation, the judge sentenced defendant to death. In upholding the conviction on direct appeal, the Louisiana Supreme Court held that the erroneous instruction was harmless beyond a reasonable doubt. See State v. Sullivan, 596 So.2d 177 (La.1992).
In Sullivan v. Louisiana, supra, the United States Supreme Court discussed the relationship between the Fifth Amendment requirement of proof beyond a reasonable doubt and the Sixth Amendment requirement of a jury verdict. The Court reviewed its opinion in Cage, which held that an improper reasonable doubt jury instruction does not produce a jury verdict of guilty beyond a reasonable doubt. The Court discussed the proper role of an appellate court engaged in the Chapman harmless error analysis and concluded that since there was no jury verdict within the meaning of the Sixth Amendment, the premise for a harmless error analysis was absent. The Supreme Court therefore reversed the judgment of the Louisiana Supreme Court and remanded the matter for further proceedings. See State v. Sullivan, 623 So.2d 1315 (La.1993).
Prior to the United States Supreme Court's decision in Sullivan v. Louisiana, in State v. Dobson, 578 So.2d 533 (La.App. 4th Cir.1991), writ denied, 588 So.2d 1110 (La. 1991), our brethren on the Fourth Circuit held that where no contemporaneous objection is made to the improper Cage reasonable doubt jury charge, the claim is not reviewable on appeal. The contemporaneous objection rule is contained in LSA-C.Cr.P. art. 841, and provides that "an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." Art. 801 contains the following provision dealing specifically with a jury charge:
A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury.
As stated in State v. Trackling, 598 So.2d 615, 618 (La.App. 4th Cir.1992), the purpose of Louisiana's contemporaneous objection rule is:
(1) to require counsel to notify the trial judge of an error at a time when the judge may correct it, and (2) to prevent counsel from allowing an error to pass without *1219 comment in hopes of a favorable verdict, and if the verdict is unfavorable to raise the error on appeal. State v. Arvie, 505 So.2d 44, 47 (La.1987).
In the matter before us, it is undisputed that defendant failed to contemporaneously object to the improper reasonable doubt jury charge.
Subsequent to the United States Supreme Court's decision in Sullivan v. Louisiana, the Fourth Circuit overruled Dobson in State v. Berniard, 625 So.2d 217 (La.App. 4th Cir. 1993). However, that opinion was reversed by the Fourth Circuit in an en banc rehearing. The Fourth Circuit upheld Dobson and concluded that "since there was no contemporaneous objection to the erroneous instruction on reasonable doubt the issue was not preserved for appeal." State v. Berniard, supra at 220.
In the original Berniard opinion, Judge Ward assigned the following reasons in dissent, which were adopted by Judges Ciaccio and Lobrano, and which we adopt as our own:
While Sullivan plainly says "a constitutionally deficient reasonable-doubt instruction cannot be harmless error," and constitutes reversible error as a "structural defect in the constitution of the trial mechanism," Sullivan does not set aside Louisiana's procedural rules which require a contemporaneous objection to preserve an issue for appeal. An objection not only preserves the issue, it first notifies the trial court that counsel does not agree with the instructions, and it next gives the trial court an opportunity to consider counsel's complaint, that is to reflect on the law and to correct an error if he is convinced of it. Without an objection, the trial court may well conclude that counsel agrees with the instruction, or even desires it. In any event, without an objection the trial court will not have an opportunity to make a decision on the issue.
The argument that the "Cage" instruction would have been given in spite of any objection is sheer speculation, demeaning to trial courts as an inference that they would not listen to well reasoned argument.
Nothing in Sullivan definitively requires overruling Dobson, and until a court of higher jurisdiction holds that Louisiana's requirement of a contemporaneous objection is inapplicable to jury instructions, I am not willing to overrule Dobson, particularly in light of the enormous consequences of such a decision. State v. Berniard, supra [625 So.2d] at 219-220, footnote 1.
Accordingly, we find that the contemporaneous objection rule precludes defendant from raising the improper Cage instruction on appeal. Therefore, the district court did not err in denying defendant's application for post-conviction relief on this basis.

ASSIGNMENT OF ERROR NUMBER TWO
The jury erred in finding the defendant, Jerrald L. Wilson, guilty of first[2] degree murder in that the evidence submitted was legally insufficient to convict upon two counts of first degree murder.
By this assignment, defendant challenges the sufficiency of the evidence used to convict him on each of the two counts of first degree murder. In its denial of defendant's application for post-conviction relief, the district court ruled that the evidence when viewed in the light most favorable to the prosecution was sufficient to convict the defendant of both counts of first degree murder. In State v. Burrow, 565 So.2d 972, 976 (La.App. 5th Cir.1990), writ denied, 572 So.2d 60 (La. 1991), this court addressed the constitutional standard for testing the sufficiency of the evidence as follows:
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986); State v. Davis, 540 So.2d 600 (5th Cir. *1220 1989). When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The requirement of LSA-R.S. 15:438 does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984); State v. DiLosa, 529 So.2d 14 (5th Cir.1988), writ denied, 538 So.2d 1010 (La.1989). Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Porretto, 468 So.2d 1142 (La.1985), dissenting opinion, 475 So.2d 314 (La.1985).
In the present case, defendant was convicted of two counts of first degree murder based on LSA-R.S. 14:30A(3), which provides:
A. First degree murder is the killing of a human being:
. . . . .
(3) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person.
In State v. Wilson, supra, this court noted that there are two necessary elements of this crime: (1) the killing of a human and (2) the specific intent to kill or inflict great bodily harm on another human. Thus, the statute does not require proof that the defendant actually killed or inflicted great bodily harm upon the second victim, only that he had the specific intent to do so. State v. Wilson, supra 538 So.2d at 1127-1128.
Specific intent exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Specific intent is a state of mind and, as such, need not be proven as a fact but may be inferred from the circumstances and actions of the accused. State v. Graham, 420 So.2d 1126 (La.1982); State v. Edge, 504 So.2d 1169 (La.App. 5th Cir.1987), writ denied, 507 So.2d 226 (La.1987). The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of the correctness of this determination is to be guided by the Jackson standard. State v. Huizar, 414 So.2d 741 (La.1982).
In reviewing a sufficiency claim, the primary function of the appellate court is "not to redetermine defendant's guilt or innocence in accordance with our appreciation of the facts. Rather, our function is to review the evidence in the light most favorable to the prosecution and determine whether there is sufficient evidence to support the jury's conclusion." State v. Burrow, supra, 565 So.2d at 977. After a thorough review of the entire record, we find that there is sufficient evidence to support the jury's conclusion that the defendant was guilty of first degree murder in the deaths of both Thomas Gormin and Joan Gormin. Therefore, the district court did not err in denying defendant's application for post-conviction relief on this basis.

ASSIGNMENT OF ERROR NUMBER THREE
The defendant was denied a fair trial in the above-captioned matter, due to inability to gain access to exculpatory material in possession of the State of Louisiana.
In this assignment, defendant complains that he was denied access to three statements taken on March 31, 1987, by Detective Maggie Pernia of the Jefferson Parish Sheriff's Office. Specifically, defendant claims that he was denied exculpatory evidence which was contained in the statements of Ms. Jennifer Braud (Thomas Gormin's girlfriend), Mrs. Helen Hunter (Joan Gormin's best friend), and Mrs. Joyce Hadley (Joan Gormin's employer).
Defendant contends that these were exculpatory statements which were relevant because a substantial portion of the defense presentation was based upon the prior mental history and disorders of Thomas Gormin. Defendant further contends that despite proper requests for such information, defendant *1221 was denied the identity of the three witnesses as well as their statements.
Upon a defense request, the state must disclose evidence that is favorable to defendant when it is material to defendant's guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Knapper, 579 So.2d 956 (La. 1991); State v. Myers, 584 So.2d 242 (La. App. 5th Cir.1991). writ denied, 588 So.2d 105 (La.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1945, 118 L.Ed.2d 550 (1992).[3] Except as expressly provided by statute, a defendant in Louisiana is not entitled to the discovery of reports, memoranda, or other internal state documents which are made by the district attorney or agents of the state, nor is he entitled to witnesses' statements made to the district attorney or agents of the state. LSA-C.Cr.P. art. 723.[4] See also State v. Ates, 418 So.2d 1326 (La.1982), appeal after remand, 429 So.2d 176 (La.App. 2nd Cir.1983); State v. Clark, 581 So.2d 747 (La.App. 4th Cir.1991), writ denied, 590 So.2d 63 (La.1991). However, as noted initially, the state is required to produce exculpatory evidence upon the request of a defendant. Thus, a defendant may not be denied exculpatory statements made by a witness other than the defendant provided the statement is material and relevant to the issue of guilt or punishment. State v. Ates, supra.
Favorable evidence includes both exculpatory evidence and impeachment evidence. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); State v. Knapper, supra. Neutral evidence does not fall within this category. State v. Myers, supra.
The standard for determination of the materiality of evidence was set forth in United States v. Bagley, supra, as follows:
The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. [473 U.S. at 682] 105 S.Ct. at 3383.
The mere possibility that evidence undisclosed prior to trial may have been helpful to the defense does not establish "materiality;" the reasonable probability of a different outcome is required. State v. Myers, supra 584 So.2d at 252.
The undisclosed information must be evaluated in the context of the entire record; and if there is no reasonable doubt about defendant's guilt, irrespective of this evidence, there is no justification for a new trial. State v. Baker, 582 So.2d 1320 (La.App. 4th Cir.1991), writ denied, 590 So.2d 1197 (La. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 62, 121 L.Ed.2d 30 (1992).
In the present case, the information sought does not constitute exculpatory evidence. The statements of the three individuals merely reflect that Thomas Gormin was involved in narcotics and that the relationship between he and his mother was sometimes hostile. The defendant had the opportunity at trial to cross-examine Detective Trapani and Detective Pernia about any *1222 statements taken from these individuals. All three of these individuals were referred to in the testimony of the officers as they described their parts in the investigation of the murder. Since defendant knew about the existence of these witnesses, he could have subpoenaed them if he thought their testimony would be helpful. Moreover, even if this testimony was exculpatory and material in a constitutional sense, the failure of the state to disclose it will not constitute reversible error absent actual prejudice to the defendant. State v. Myers, supra. No actual prejudice to the defendant was shown. Therefore, the district court did not err in denying defendant's application for post-conviction relief on this basis.

ASSIGNMENT OF ERROR NUMBER FOUR
The defendant, Jerrald L. Wilson, was denied effective assistance of counsel using the analysis of Strickland v. Washington.
Defendants in criminal trials are entitled to effective assistance of counsel under the Sixth Amendment of the United States Constitution and Article I, Section 13 of the Louisiana Constitution. When a defendant seeks reversal of a conviction based on ineffective assistance of counsel, he must meet the two-prong test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), rehearing denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984).
1) The defendant must first show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. The performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.
A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsels' function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.
2) The defendant must then show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the fact-finder would have had a reasonable doubt respecting guilt. See State v. Lockett, 542 So.2d 670 (La.App. 5th Cir. 1989); State v. Hudson, 570 So.2d 504 (La. App. 5th Cir.1990), writ denied, 580 So.2d 920 (La.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 338, 116 L.Ed.2d 278 (1991).
Defendant argues that counsel was ineffective because he did not object to the incorrect reasonable doubt jury charge, did not conduct adequate pre-trial investigation, and failed to raise relevant issues on appeal.
In ruling on defendant's application for post-conviction relief, the district court concluded that counsel's performance did not fall below the standards set forth in Strickland v. Washington. In the July 16, 1992 judgment, the district court stated:
Finally, petitioner contends he had ineffective assistance of counsel due to his attorney's failure to object to unconstitutional jury instructions and failure to conduct adequate discovery. The Court also finds these claims without merit. First, the jury instructions used in petitioner's case were adopted prior to Cage and not considered unconstitutional at the time of trial. Secondly, counsel's decisions regarding the interviewing and examination of witnesses *1223 are considered trial strategies and do not constitute ineffective assistance of counsel.[5]
We agree with these lower court findings.
As to defendant's ineffective appellate counsel claim, through counsel, defendant raised two claims on appeal, one of which merited much consideration. Defendant's counsel apparently reviewed the entire record and conscientiously raised the claims that he thought were worthy of consideration. A review of both trial and appellate counsels' performances reflect that defendant was afforded effective legal representation within the guarantees of the Sixth Amendment. Therefore, the district court did not err in denying defendant's application for post-conviction relief on this basis.
For the foregoing reasons, the July 16, 1992 judgment denying defendant's application for post-conviction relief is affirmed.
AFFIRMED.
NOTES
[1] There are discrepancies in the record as to the spelling of defendant's first name. In some places, it is spelled "Jerrald" and in others, it is spelled "Jerald."
[2] At this portion of the designated assignment of error, defense counsel incorrectly listed "second" degree murder in place of "first" degree murder.
[3] See also LSA-C.Cr.P. art. 718 which provides:

Subject to the limitation of Article 723, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies or portions thereof, which are within the possession, custody, or control of the state, and which:
(1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or
(2) are intended for use by the state as evidence at the trial, or
(3) were obtained from or belong to the defendant.
The court may determine whether evidence is subject to the provisions of paragraph (1) hereof by in camera inspection.
[4] Art. 723 reads as follows:

Except as provided in Articles 716, 718, 721, and 722, this Chapter does not authorize the discovery or inspection of reports, memoranda or other internal state documents made by the district attorney or by agents of the state in connection with the investigation or prosecution of the case; or of statements made by witnesses or prospective witnesses, other than the defendant, to the district attorney, or to agents of the state. Added by Acts. 1977, No. 515, § 1.
[5] The district court also ruled that defendant was not denied effective assistance of counsel in its October 22, 1991 judgment.