# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 16-868

**STATE OF LOUISIANA**

**VERSUS**

**HANK ALLEN MORAN**
**AKA - HANK MORAN**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 13-K-4735-D
HONORABLE ADAM GERARD CASWELL, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and
Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**Earl B. Taylor**
**District Attorney – 27th Judicial District**
**Jennifer Ardoin**
**Alisa Ardoin Gothreaux**
**Assistant District Attorneys – 27th Judicial District**
**P. O. Drawer 1968**
**Opelousas, LA 70571**
**Telephone:  (337) 948-0551**
**COUNSEL FOR:**
        **Plaintiff/Appellee - State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**Telephone:  (337) 436-2900**
**COUNSEL FOR:**
        **Defendant/Appellant -   Hank Allen Moran aka - Hank Moran**

**Hank Allen Moran**
**Louisiana State Prison**
**Falcon III**
**Angola, LA 70712**

**THIBODEAUX, Chief Judge.**

Defendant Hank Moran appeals his jury conviction for the first degree murder of his wife, Constance Moran. Before she was killed, Ms. Moran called police to report Mr. Moran had choked her. Officers responded and returned to the home after they were unable to locate Mr. Moran at a local park he frequented. When an officer returned, he found Mr. Moran crouching over his wife's body as blood seeped from her. Mr. Moran was charged with first degree murder pursuant to La.R.S. 14:30(A)(9)(a).[1] The State argued he killed his wife to prevent her from testifying about the domestic violence incident. On appeal, he argues the evidence did not support a guilty verdict and the trial court admitted inadmissible statements that require reversal of the verdict.

We affirm the trial court's rulings and the jury's guilty verdict.

I.

**ISSUES**

We must decide:

1.  whether the trial court erred in denying Mr. Moran's Motion to Suppress statements he made after his arrest but prior to being advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966) and La.Const. art. 1 § 13;

---

[1]Louisiana Revised Statutes 14:30(A)(9)(a) states:

A. First degree murder is the killing of a human being:

. . . .

(9) When the offender has specific intent to kill or to inflict great bodily harm upon a victim who was a witness to a crime . . . on a prior occasion and:

(a) The killing was committed for the purpose of preventing or influencing the victim's testimony in any criminal action or proceeding whether or not such action or proceeding had been commenced[.]

2. whether the trial court erred in denying Mr. Moran's Motion in Limine and allowing statements made by Ms. Moran, who was unavailable to testify as she was deceased, in violation of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004); and

3. whether there is sufficient evidence to support a guilty verdict of first degree murder pursuant to La.R.S. 14:30(A)(9)(a).

II.

**FACTS AND PROCEDURAL HISTORY**

Officers responded to a 911 call from Ms. Moran who reported that her husband had choked her. Officer Morris Leday encountered Ms. Moran about a half block from her house. Ms. Moran gave a written statement and orally told the officer her husband had threatened to kill her and himself if she told police he choked her. Additional officers arrived and searched the home for Mr. Moran to no avail. Officers then traveled to a local park to search for Mr. Moran based on Ms. Moran's information that he often went there. Before doing so, officers secured the home, searched around the property and under the home, and told Ms. Moran to remain inside with the doors locked. Unable to locate Mr. Moran at the park, officers returned to the home.

When Officer Leday returned, he noticed the back door had been forced open. Upon entering the home, Officer Leday heard "thrashing" sounds coming from the bedroom. He went to the living room and observed Mr. Moran crouched over Ms. Moran with blood on the floor and her body. Officer Leday identified himself, demanded Mr. Moran to raise his hands, and ordered him to drop the knife. Mr. Moran dropped the knife after being ordered four times. He then grabbed a bottle of pills and swallowed a handful.

2

While being escorted out of the home, he stated, "I bet now she'll listen." Later, while being examined by paramedics he told Officer Leday, "I did what I had to do, I did the job right, huh, officer? Did I do the job right officer?" Mr. Moran was transported to the Special Operations building for interrogation. As the interrogation room was being prepared, Officer Leday waited in the lobby area with Mr. Moran, who had not been given *Miranda* warnings yet. While waiting, Mr. Moran made statements to Officer Leday admitting to the killing, describing his method, and expressing the gratification he received from killing his wife. Mr. Moran stated, "[t]he last thing she told me was that she loved me. I looked at her straight in the eyes and I said, 'I love you too, baby,' then I jugged her straight down in her esophagus."

Mr. Moran was charged with first degree murder. He filed a number of motions to strike statements he gave Officer Leday before he was *mirandized* and to suppress Ms. Moran's written and oral statements. A jury found him guilty of first degree murder, and he was sentenced to life in prison at hard labor. Mr. Moran now appeals the guilty verdict and the trial court's admission of the statements.

III.

## LAW AND DISCUSSION

### A. Whether there is sufficient evidence to support a guilty verdict of first degree murder pursuant to La.R.S. 14:30(A)(9)(a).

We will discuss assignment of error number three first since Mr. Moran asserts that the evidence was insufficient to sustain the guilty verdict. Generally, when a sufficiency of the evidence allegation is raised on appeal the allegation is addressed first because if the allegation has merit, a defendant could

3

obtain an acquittal of the conviction which could render the remaining allegations of errors moot. *Hudson v. Louisiana,* 450 U.S. 40, 101 S.Ct. 970 (1981); *State v. Hearold*, 603 So.2d 731 (La.1992).

Mr. Moran argues the State failed to prove beyond a reasonable doubt that he killed his wife with the specific intent to make her unavailable to testify against him regarding the domestic violence incident. He also argues he did not act with specific intent because he was intoxicated when he killed his wife.

The State maintains the jury concluded beyond a reasonable doubt Mr. Moran killed to prevent his wife from cooperating with the domestic abuse investigation. It argues Mr. Moran's threat to kill her if she called the police supports the jury's finding. Moreover, voluntary intoxication does not excuse the crime. Further, the jury listened to the evidence presented and determined that Mr. Moran was not intoxicated and acted with specific intent to kill his wife.

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983).

> Review of the sufficiency of the evidence as a matter of the Due Process Clause under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), encompasses all of the evidence introduced at trial, inadmissible as well as admissible. *See State v. Hearold*, 603 So.2d 731, 734 (La.1992) ("[W]hen the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial . . . but is

4

> not entitled to an acquittal even if the admissible evidence, considered alone, was insufficient.") (citing *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988)).

*State v. Bolden*, 11-2435, p. 2 (La. 10/26/12), 108 So.3d 1159, 1161.

In order for us to affirm a conviction, the record must reflect that the State has satisfied its burden of proving all the elements of the alleged crime beyond a reasonable doubt.

The State charged Mr. Moran with first degree murder pursuant to La.R.S. 14:30(A)(9)(a). This statute mandates that first degree murder is the killing of a human being "[w]hen the offender has specific intent to kill or to inflict great bodily harm upon a victim who was a witness to a crime or was a member of the immediate family of a witness to a crime committed on a prior occasion[.]" La.R.S. 14:30(A)(9). And, "[t]he killing was committed for the purpose of preventing or influencing the victim's testimony in any criminal action or proceeding whether or not such action or proceeding had been commenced[.]" La.R.S. 14:30(A)(9)(a).

The State must also prove that Mr. Moran acted with specific intent. "Specific intent is the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." *State v. Carroll*, 95-859, p. 3 (La.App. 3 Cir. 1/31/96), 670 So.2d 286, 288 (citing La.R.S. 14:10(1)). "Specific criminal intent . . . need not be proven as fact, but may be inferred from the circumstances present in the case and from the action of the defendant." *Id.* at 289. The severity of the attack on the victim is an indicator of the defendant's specific intent to kill. *State v. Myers*, 584 So.2d 242 (La.App. 5 Cir.), *writ denied*, 588 So.2d 105 (La.1991), *cert.*

5

*denied*, 504 U.S. 912, 112 S.Ct. 1945; *State v. Segura*, 464 So.2d 1116 (La.App. 3 Cir.), *writ denied*, 468 So.2d 1203 (La.1985).

Here, Officer Leday observed Mr. Moran standing over Ms. Moran with a knife in his hand. He confessed to stabbing his wife to death. At trial, testimony established Ms. Moran was stabbed twenty-one times near the neck and upper body. The physical evidence and circumstances indicate Mr. Moran had specific intent to kill his wife. Additionally, there is no direct evidence via medical reports or testimony from treating paramedics that Mr. Moran was intoxicated when he killed. In fact, the treating paramedic testified Mr. Moran was alert, oriented, and stable when she evaluated him.

Further, the jury heard Officer Leday's testimony that Ms. Moran told him Mr. Moran threatened to kill her if she reported the choking incident to the police. This statement coupled with Mr. Moran killing her immediately after Officer Leday left was sufficient for the jury to conclude reasonably that Mr. Moran killed with specific intent to prevent her testimony regarding his domestic abuse. The fact that Mr. Moran did not have a charge pending for domestic battery is immaterial. As noted above, the statute states, "in any criminal action or proceedings *whether or not such action or proceedings had been commenced*[.]" La.R.S. 14:30(A)(9)(a)(emphasis added). Accordingly, there was sufficient evidence to support a guilty verdict of first degree murder pursuant to La.R.S. 14:30(A)(9)(a).

**B.** **Whether the trial court erred in denying Mr. Moran's Motion to Suppress statements he made after his arrest but prior to being advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966) and La.Const. art. 1 § 13.**

Mr. Moran made two statements to Officer Leday that are at issue. Mr. Moran made the first statement[2] as the paramedics were evaluating him. He made the second[3] as he was waiting to be interrogated in the lobby area of the Special Operations building. Officer Leday admitted that Mr. Moran was not advised of his rights until he entered the interrogation room, which occurred after the statements were made. The trial court determined the statements were admissible because Mr. Moran made them voluntarily and spontaneously and not in response to police questioning.

Mr. Moran maintains the statements were inadmissible because he gave them before he was advised of his rights. Mr. Moran contends La.Const. art. 1 § 13 requires *Miranda* warnings to be given at the time of arrest, not just when custodial interrogation occurs. Thus, he should have been advised of his rights at the scene, when he was arrested and exigent circumstances no longer existed. He further asserts that the trial court admitting these statements was not harmless error. He contends that without the statements the jury could have concluded reasonably that the murder was committed in sudden passion, which would support the responsive verdict of manslaughter.

---

[2] Mr. Moran stated, "I did what I had to do. I did the job right, huh, officer? Did I do the job right officer?"

[3] He stated, "I always wanted to kill somebody. I warned that bitch not to tell the fucking cops on me. She called the cops on me. I waited under the house 'til y'all left, then I kicked the door, and commenced to jugging her." He further stated, "[t]he last thing she told me was that she loved me. I looked at her straight in the eyes and I said, 'I love you too, baby,' then I jugged her straight down in her esophagus. She yap, yap, yap her mouth all night, and I was tired of it." He also said, "I was trying to sleep, and I just couldn't take it anymore. I just fucking snap [sic]. I just couldn't take it anymore, and I can't wait to kill again. It's kind of gratifying, believe it or not."

7

Conversely, the State posits the statements were admissible under *Miranda* and La.Const. art. 1 § 13 because they were not the result of interrogation but were volunteered freely. It notes that Mr. Moran made the statement without questioning by law enforcement or anyone else.

When deciding the admissibility of a confession, the trial court must consider the totality of the circumstances. A showing of voluntariness must be analyzed on a case-by-case basis with regard to the facts and circumstances of each case. *State v. Verret*, 06-1337 (La.App. 1 Cir. 3/23/07), 960 So.2d 208. On appeal, a trial court's ruling regarding the admissibility and voluntary nature of a confession is given great weight and will not be distributed unless not supported by the evidence. *Id.*

Jurisprudence teaches that statements made after a defendant is taken into custody are admissible if the statements were spontaneous, voluntary, and not a result of police questioning or compelling influences. Before the State may introduce what purports to be a confession, it must affirmatively show the confessional statement "was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises." La.R.S. 15:451; La.Code Crim.P. art. 703(D); *see also State v. Coleman*, 07-794 (La.App. 3 Cir. 2/6/08), 976 So.2d 268. "[S]*pontaneous and voluntary* statements *not* made as a *result of police* interrogation or compelling influence are admissible in the absence of *Miranda* warnings even if the accused is *in custody*." *State v. Foret*, 96-281, p. 29 (La.App. 5 Cir. 11/14/96), 685 So.2d 210, 222 (citing *State v. Thompson*, 399 So.2d 1161 (La.1981)).

Here, it is clear Mr. Moran was in custody as the suspected killer when he made the statements. He was arrested at the scene after Officer Leday

observed him standing over his wife's bloody body with a knife in his hand. Thus, the issue is whether Mr. Moran offered his statements spontaneously and voluntarily, or whether police questioning triggered him, which would have entitled him to advisement of his *Miranda* rights. We will address the statements separately.

Mr. Moran made his first statement while being treated by the paramedics. After the paramedics determined Ms. Moran was deceased, Officer Leday asked them to examine Mr. Moran because he had ingested an undetermined amount of pills. Considering Officer Leday observed Mr. Moran standing over his bloodied wife with a knife in his hand, there was no rush to interrogate Mr. Moran to determine who the killer was in this case. Officer Leday's first concern was the victim, contacting an ambulance, and Mr. Moran's health. It would have been an improper time to give *Miranda* warnings to someone who had taken an unknown quantity of unidentified pills.

The two paramedics testified they heard Mr. Moran ask Officer Leday if he killed his wife successfully. They also attested that Officer Leday was not questioning Mr. Moran when he made the statement. Mr. Moran did not offer any evidence that he made the statements in response to police questioning. We conclude this statement was purely voluntary and not given in response to interrogation or compelling influences. Accordingly, we affirm the trial court's ruling to admit the statement he made at the scene.

Mr. Moran made the second statement while waiting to be interrogated at the Special Operations building. Detective Kelly Sam testified at the suppression hearing that he left the scene in his patrol car at the same time Officer Leday left with Mr. Moran. Because it was early in the morning, the

Special Operations building had to be opened and prepared for an interrogation. As Officer Leday sat in the lobby with Mr. Moran, Detective Sam overheard a portion of Mr. Moran's statement regarding hiding under the house, kicking the door in, and stabbing his wife. The detective stated no one was questioning Mr. Moran when he made these statements. Mr. Moran described to the officer how he looked his wife in her eyes, told her he loved her, then "jugged" her. According to Officers Leday and Sam, the only person speaking at this time was Mr. Moran. The evidence leads us to conclude that the statement was purely voluntary and spontaneous, and not in response to police questioning. We find the trial court did not err in admitting neither statement at issue.

**C.** **Whether the trial court erred in denying Mr. Moran's Motion in Limine and allowing statements made by Ms. Moran, who was unavailable to testify as she was deceased, in violation of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004).**

Mr. Moran next claims that the trial court erred by admitting statements that Ms. Moran made to the police. Ms. Moran told Officer Leday that her husband choked her and threatened to kill her and himself if she told the police. She also made a written statement with the same information. The trial court determined the statement were admissible under the forfeiture by wrongdoing hearsay exception pursuant to La.Code Evid. art. 804(B)(7). It reasoned that Mr. Moran killed his wife to render her unavailable to testify against him about the choking incident.[4]

---

[4]The court stated, "[i]t appears that the defendant, at least as this point in time, made good on the threat he made. As a result, I think he's forfeited his right to complain that he cannot confront the witness[.]"

Mr. Moran argues pursuant to *Crawford,* 541 U.S. 36,[5] the statements were hearsay and testimonial and should have been excluded as Ms. Moran was unavailable. He argues that the trial court erred in its ruling because the State failed to prove Mr. Moran killed his wife with intent to make her unavailable to testify against him. Further, to use the forfeiture by wrongdoing hearsay exception, Mr. Moran argues there must be a case pending against him and evidence he killed to prevent testimony at the pending trial. He also notes he attempted suicide after he killed his wife. This is evidence, he argues, of his intent to kill himself, instead of facing trial for battering his wife.

In opposition, the State admits that the statements are testimonial hearsay; however, they are admissible under the forfeiture by wrongdoing exception. The State cites *Giles v. California*, 554 U.S. 353, 128 S.Ct. 2678 (2008), for the proposition that the exception applies when the killing occurred either to prevent a victim of domestic abuse from reporting the crime, or to prevent the victim from cooperating in the criminal investigation. It posits that Mr. Moran fulfilled his promise to kill his wife if she called the police. Consequently, his intent to prevent her from cooperating with a criminal investigation into the choking incident was clear.

United States Constitution Amendment VI and La.Const. art. 1 § 16 guarantee an accused person in a criminal prosecution the right to confront the witnesses against him. *See also State v. Harris*, 13-133 (La.App. 3 Cir. 12/11/13), 156 So.3d 694. In *Crawford*, 541 U.S. 36, the United States Supreme Court restricted the admissibility of testimonial statements as evidence at a criminal trial

---

[5]*Crawford* established that testimonial statements made by unavailable witnesses violated the accused's Sixth Amendment right to confront the witness, unless the accused had an opportunity to cross-examine the witness.

when the declarant is unavailable, unless the accused had a prior opportunity to cross-examine the declarant. However, *Crawford* recognized exceptions to the right of confrontation, including the doctrine of forfeiture by wrongdoing. *See id.* at 62 ("For example, the rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds; it does not purport to be an alternative means of determining reliability.").

The forfeiture by wrongdoing exception to the hearsay rule is codified in La.Code Evid. art. 804(B)(7)(a), which is modeled after Federal Rule of Evidence 804(b)(6). Under this article, "[a] statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness," is an exception to hearsay. La.Code Evid. art. 804(B)(7)(a). Further, under La.Code Evid. art. 804(B)(7)(b), "[a] party seeking to introduce statements under the forfeiture by wrongdoing hearsay exception shall establish, by a preponderance of the evidence, that the party against whom the statement is offered, engaged or acquiesced in the wrongdoing."

The United States Supreme Court further examined the relationship between the Confrontation Clause and the forfeiture by wrongdoing doctrine in *Giles*, 554 U.S. 353. There, a defendant shot and killed his ex-girlfriend. Weeks before the shooting, officers responded to a domestic violence report concerning the two. Prosecutors sought to admit statements from the victim that the defendant punched and threatened to kill her. The trial court admitted the statements during the murder trial. The defendant appealed his conviction. During this time, the Supreme Court decided *Crawford*, 541 U.S. 36. In response, the California Supreme Court affirmed the conviction under the forfeiture by wrongdoing

12

doctrine. It determined that the defendant had forfeited his right to confront the victim because he committed the murder that made the victim unavailable.

The United States Supreme Court reversed and determined that the California Supreme Court found incorrectly that the intent of the defendant was irrelevant to its application of the forfeiture doctrine. The Supreme Court wrote "[t]he manner in which the rule was applied makes plain that unconfronted testimony would *not* be admitted without a showing that the defendant intended to prevent a witness from testifying." *Giles*, 554 U.S. at 361. Further, if the "evidence suggested that the defendant had caused a person to be absent, but had not done so to prevent the person from testifying—as in the typical murder case involving accusatorial statements by the victim—the testimony was excluded unless it was confronted or fell within the dying-declarations exception." *Id.* at 361-62.

Mr. Moran's intent is established by his words and actions before and after the killing. After Mr. Moran choked his wife, he threatened to kill her and himself if she reported him to the police. Ms. Moran called 911 and told the dispatcher Mr. Moran choked and threatened her. Ms. Moran also stated that Mr. Moran overheard her talking to the dispatcher, opened the door, and threatened her again. He then hid under the house as officers arrived and attempted to secure the home, waited until the officers left, kicked in the door, and fulfilled his promise to kill his wife.

Mr. Moran's arguments that he did not kill his wife with the intent to make her unavailable to testify are unconvincing. First, the language of La.Code Evid. art. 804(B)(7) does not mandate that there must be a case pending against Mr. Moran at the time of the killing to utilize the forfeiture by wrongdoing

13

provision. Additionally, the facts of *Giles*, 554 U.S. at 353, does not indicate there was a charge pending for the prior domestic abuse allegation or any other criminal act where the victim was expected to testify.

Second, Mr. Moran taking an unknown quantity of pills is indicative of his state of mind immediately after he killed his wife and not his intent before and during the killing. Mr. Moran said he was going to kill his wife if she reported him to the police. She reported him; he killed her. His actions are coupled with his words after the killing. As Officer Leday escorted Mr. Moran out of the bedroom, he stated, "I bet now she'll listen." He also told the officer, "I warned that bitch not to tell the fucking cops on me. She called the cops on me. I waited under the house 'till y'all left, then I knocked the door, and commenced to jugging her."

Based on the foregoing, we find no error in the trial court's ruling. The record evidence establishes Mr. Moran killed his wife with intent to make her unavailable to testify against him regarding the domestic violence incident. Accordingly, we affirm the trial court's ruling on this issue.

IV.

## CONCLUSION

For the reasons stated, we affirm the trial court's rulings and Hank Allen Moran's conviction for first degree murder pursuant to La.R.S. 14:30(A)(9)(a).

**AFFIRMED.**

14